ELLIS, Judge.
The plaintiffs sold to the defendant, Daize Cheramie, a parcel of land off of the northern portion of their property and he in turn sold three portions of it to the other defendants. On the 25th day of April 1949 the present defendants filed actions in boundary against the present plaintiffs for the purpose of having judicially fixed and established their southern and the present plaintiff’s northern boundary line. These suits were 'Nos. 9410, 9411, 9412, 9413, and were consolidated for the purpose of trial.
*881 On November 17, 1949 Daize Cheramie also filed a boundary action against Gustave Cretini to settle his northern boundary line between the two properties.
On the date that Daize Cheramie filed suit against Cretini, although no exceptions or answer had been filed in the suit by the various defendants against the present plaintiffs, no action other than the making of the survey had been taken. In contrast, the day following the filing of the suit by Daize Cheramie against Cretini to settle the northern boundary line of Daize Cheramie’s property, answer was filed which contained a plea of ten and thirty years prescriptions and judgment was rendered on the 29th of November, 1949, sustaining both pleas of prescription and “the boundary line separating the property of the plaintiff from the property of the defendant be and the same is hereby fixed along the line of the fence now separating said properties.” There is no testimony and no minutes of the court in this suit which is No. 9558.
In the suits against the present plaintiffs (Nos. 9410, 9411, 9412 and 9413) which will hereafter be referred to as 9410, a survey was made and a procés verbal filed together with a -map on September 9, 1949; on January 9, 1950 preliminary default was entered, and on February 20, 1950, in accordance with verbal instructions of the District Judge the surveyor, C. E. Heck, made another procés verbal changing the previous boundary line, which he had established according to the titles of the parties, so as to make the southern boundary line of the present defendants’ property parallel and in conformity to the judicial line which the District Court had established as the boundary line between Daize Cheramie and Cretini. On the same day that this procés verbal was filed, judgment was confirmed and signed in accordance with the verbal instructions of the judge to the surveyor after the entry of the preliminary default.
In June 1952 the present defendants obtained an order directed to Carl E. Heck, surveyor, directing him to place visible markers or monuments on the line judicially established as a boundary between their property and the plaintiffs by judgment on February 20, 1950. There was quite a disturbance, which resulted in the jailing of some of the plaintiffs.
On November 7, 1952 the present suit was filed by Rapheal Vegas and Aimee Vegas, wife of Octave Bruce, in which they are seeking to annul the judgments rendered in suit 9410. Plaintiffs in effect have alleged the filing of the suits against them by the Cheramies to establish their common boundary which would be Cheramie’s southern and plaintiffs’ northern boundary. They also allege the subsequent filing of the suit on the date above set forth by Daize Chera-mie against Cretini to fix Cheramie’s northern boundary of the property sold to him by the plaintiffs. They allege that they were not notified nor called in any manner to-defend the title or boundary of the property which they sold and warranted to Daize Cheramie. They further allege that Chera-mie made no defense to the suit and that had. they been called or notified the prescriptive pleas of possession could have been successfully refuted, and further allege that if Cretini had acquired the property between the title boundary and the old fence which he claimed should be the boundary and which the Court established as the boundary, that such possession was acquired after they had sold the property to Daize Chera-mie. They further allege that they filed no-answer in suit No. 9410 as they were satisfied with the line as fixed in accordance with their titles by Mr. Carl E. Heck, Surveyor. Plaintiffs also allege that a preliminary default was entered and it was-then that the District Judge gave verbal orders or instructions to Carl E. Heck, the Surveyor, to go back on the property and resurvey this boundary line and establish it parallel to and in conformity with the old fence line on the north of the Cheramie property which the court had fixed as the boundary between Cheramie and Cretini, thus moving plaintiff’s boundary line as-established in accordance with the titles, some forty or fifty feet south. Plaintiffs also alleged that they received no notice of *882 the second survey, that all of the above constituted ill practice entitling them to a judgment decreeing the judgments rendered in Nos. 9410, 9411, 9412 and 9413 as null and void under Article 607 of the Code of Practice.
The defendants filed an exception of no right and no cause of action and the lower court sustained the exception of no right of action from which judgment a suspensive appeal was taken to this court. The judgment of the lower court was reversed and the case remanded for further proceedings in accordance with the judgment. See Vegas v. Cheramine, La.App., 69 So.2d 66.
The case was duly tried and judgment was rendered in favor of the defendants dismissing plaintiffs’ suit at their costs, and the case is now before this court on appeal by the plaintiffs.
The law with regard to actions of nullity is well established and settled in our jurisprudence. While many cases could be cited the law has recently been reaffirmed and expressed by our Supreme Court in Alonso v. Bowers, 222 La. 1093, 64 So.2d 443, 444, in which an appeal was taken from a judgment annulling and setting aside a previous judgment. The Court in discussing the law and previous cases on the subject stated:
“According to Article 60S of the Code of Practice, the causes for which the nullity of a definitive judgment may be demanded are those that are relative to form and those that appertain to the merits of the question tried. According to Article 607, one of the cases in which such judgment -may be annulled is where it appears that it was obtained by ill practices on the part of the party in whose favor it was rendered. Under the jurisprudence any improper practice or procedure which enables a party to obtain a definitive judgment comes within the meaning of this article. The courts have looked at each case from a purely equitable viewpoint to ascertain whether allowing the judgment to stand would be inequitable or unconscionable in view of the practice or procedure which enabled the party to obtain such judgment. See Laceste v. Robert, 11 La.Ann. 33; City of New Orleans v. LeBourgeois, 50 La.Ann. 591, 23 So. 542; Tarver v. Quinn, 149 La. 368, 89 So. 216; Succession of Gilmore, 157 La. 130, 102 So. 94; Walsh v. Walsh, 215 La. 1099, 42 So.2d 860; Coltraro v. Chotin, 1 La.App. 628.
“In Succession of Gilmore, supra (157 La. 130, 102 So. [94] 95), tins court said:
“ ‘ * * * The remedy given by said article (607) * * * is not restrictive. The courts of this state will not hesitate to afford relief against judgments, irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable. Our courts will follow the general principles of equity jurisprudence applied by the equity courts of the other states of this country in actions of this character. * * * ’
******
“It is not our intention to hold, nor do we hold, that the failure of defendant to comply with the statute by not serving the supplemental and amended petition on the attorney of record constitutes a vice of form for which a judgment may be annulled under the provisions of Article 606 of the Code of Practice; but we are of the opinion that the facts of this case show that the ill practice of defendant in failing to comply with the statute enabled him to procure the default judgment, and thus the case is one contemplated by Article 607 of the Code of Practice. On the basis of equity, therefore, the judgment should be annulled as its enforcement would be inequitable and unconscionable.
*883 “We are mindful of the rule that, when a demand in nullity is based on equity, the plaintiff himself must not be guilty of laches. In the instant case, since the law requires that the supplemental and amended petition should be served on defendant through his attorney of record, we do not think that Alonso was guilty of laches by his failure to inform his counsel of the service of the amended and supplemental petition.”
The plaintiffs have proven in this case that they sold a portion of the land that they owned to Daize Cheramie, who in. turn sold a portion of that which he purchased to the other three defendants, and that on the dates above stated Cheramie and the three defendants filed suits No. 9410 against the present plaintiffs asking that the boundary line between the two properties be judicially established.
At this point it is very necessary to a proper decision of the case that the pleadings in the suits 9410, et seq., be carefully examined in order to ascertain whether the Cheramies in their boundary actions made any reference to the northern boundary between Daize Cheramie and Cretini. There is no such allegation nor reference. The suit is based entirely upon the boundaries as expressed in the plaintiffs’ and defendants’ titles, which contain nothing about a fence on the north.
In accordance with the prayer of the Cheramies’ petition in No. 9410, Carl E. Heck was appointed to survey the property, which he did, and filed a procés verbal and return in court, on September 9, 1949. The surveyor in his survey and in his procés verbal and as shown by his map established the boundary line between the Cheramies and plaintiffs herein in accordance with their titles which was entirely proper and correct. This line is designated as A-B and the northern boundary of the land sold by Daize Cheramie to the present plaintiffs was designated on the map as C-D.
No further action was taken in No. 9410 until January 9, 1950 when a preliminary default was entered. In the meantime, as previously stated,' on November 17, 1949 Daize Cheramie filed suit No. 9558 against Gustave Cretini to have judicially fixed his northern boundary line. This suit shows that on Nov. 18, 1949 answer was filed and according to the witness summons which are five in number and all issued on behalf of the defendant, Cretini, the case was tried on the 29th of November 1949 and on the same day judgment was “rendered, read and signed in open court * * * ” sustaining the plea of 10 and 30 years possession and fixing an old fence as the boundary line separating the property of Daize Cheramie and Cretini. This record shows no witnesses summoned on behalf of the plaintiff, and whether he took the stand himself is not shown. There is nothing in any of the records or testimony showing that the present plaintiffs were notified, summoned or that any call in warranty issued. Regardless of this fact, subsequent to the entry of the preliminary default in No. 9410 the judge of the lower court verbally instructed the surveyor, Carl E. Heck, to change the boundary line which he had previously established in accordance with the titles and to so fix it that it would run parallel to and 192 feet southerly at right angles “from the boundary line judicially fixed between Daize (Daas) Cheramie and Gustave Cretini in suit.” To make the matter simple, the District Judge instructed the surveyor as to where he must put the boundary in total disregard of the pleadings and boundaries described in plaintiffs’ and defendants’ titles. It must be remembered that the Cheramies only asked that the boundary be fixed in accordance with the titles.
It is too well settled for the necessity of any citations of authorities that the entry of a preliminary default constitutes a joinder of issue and it is equally well settled that on a confirmation of default the plaintiff is bound by the allegations of his petition. Woodall v. Louisiana Ry. & Nav. Co., 149 La. 903, 904, 90 So. 238; Craver v. Gillespie, 148 La. 182, 86 So. 730. It can not be disputed that the boundary fixed in the judgment of the court *884 in Suits 9410, 9411, 9412 and 9413, herein sought to be annulled, were not in accordance with the pleadings of the plaintiffs in those suits nor in accordance with the boundaries given in their titles and in accordance with which they prayed that the boundaries be so fixed.
The record further shows that the plaintiffs herein attempted to employ various lawyers to attend to their interest in this matter but to no avail, until the present attorney agreed to represent them.
Applying the language used by the Supreme Court in the Alonso case, supra, the improper practice and the improper procedure used in this case enabled the present defendants to obtain a definitive judgment without which no such judgment could possibly have been rendered. In other words, the issues were clearly confined to the pleadings of the Cheramies in No. 9410, and it was improper for the lower court to instruct the surveyor as to where to place the boundary line and also to instruct the surveyor to disregard the title boundaries and fix the boundary in accordance with a separate and different suit not mentioned or declared upon by the Chera-mies in No. 9410 and one to which the present plaintiffs were in no wise a party.
Looking at the present case from a purely equitable viewpoint, it appears that to allow the judgment to stand in 9410 would be inequitable and unconscionable. As stated in the Succession of Gilmore, supra, irrespective of any issues of inattention or neglect, the circumstances under which the judgment was rendered in this case show a deprivation of the legal rights of the plaintiffs who are seeking relief by way of annullment of the judgment.
It might be argued that the ill practice in this case was not on the part of the defendants, however, the Alonso case, supra, held that if the record shows a judgment obtained by “any improper practice or procedure” or “ ‘when the circumstances under which the judgment is rendered show the deprivation of legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be un-conscientious and inequitable’ ”, then it is said that the defendant is guilty of an ill practice even though in the Alonso case it was really the Clerk of Court who failed to comply with Act 217 of 1944, supra. In such cases the word “defendant” is used broadly and is intended to cover any ill practices by which the judgment was finally obtained. Ill practice in itself does not mean any deceit or fraud practiced but contrary to law and prohibited by law.
Plaintiffs vigorously urged lack of notice in that the verbal instructions of the District Judge were not communicated to them. The record shows that notice of intention to resurvey was actually given by Mr. Heck. This is immaterial as such a notice forms a part of the illegal procedure constituting the ill-practice. Had the notice been sufficient in fully apprising the plaintiffs of just exactly what the instructions of the court were to the surveyor, it would still be illegal as the order under which it was issued was in itself illegal for the reasons previously stated.
It is therefore ordered that there be judgment in favor of the plaintiffs and against the defendants decreeing the judgment rendered against plaintiffs and in favor of each of the defendants in suits Nos. 9410, 9411, 9412, and 9413 of the docket of the Seventeenth Judicial District Court in and for the Parish of Lafourche an absolute nullity, and further ordering the cancellation and erasure of the amended survey map of Carl E. Heck, Surveyor, dated February 20, 1950 from the conveyance records of Lafourche Parish.
It is further ordered, adjudged and decreed that the defendants pay all costs of this suit.