MILLER, Judge pro tem.
(dissenting).
It is my understanding that the majority has held that the preliminary default taken three months after the pleadings were served on the defendant was prematurely entered and that under the provisions of LSA-C.C. Articles 823 et seq., and particularly Article 839, it is impossible to get a final disposition of a judicially fixed boundary by confirmation of a default. I respectfully dissent from these holdings.
The pertinent provisions of the Code of Practice of 1870, as amended, which were in effect at the time of the trial were Articles 310, 311 and 312. The preliminary default was timely entered under the provisions of these articles, and there is no exception for boundary actions. The survey which was requested and eventually made by a court appointed surveyor is evidence. The survey is not something which can be made a part of the pleadings. By the very nature of the suit to have a judicial fixing of the boundary, it is impossible to plead the location of the boundary line. That is the very question to be decided by the court. The preliminary default which was entered three months after the suit was filed had the effect of joining issue on the pleadings, not on the evidence which plaintiff would have to introduce to prove up his case. The judgment rendered on confirmation of default did not vary from the pleadings. And it is on that basis that the case of Vegas v. Cheramie, La.App., 80 So.2d 880, relied on by appellant, but not cited by the majority, is distinguished from the instant case, for there the judgments which were set aside were not responsive to the pleadings.
The cases of Griffing v. King, 12 La.App. 376, 125 So. 497, and Painten v. Pilie, 198 La. 713, 4 So.2d 804, relied on by the majority, can be readily distinguished from the instant case. In both cases, it is apparent that the defendant had made an appearance by filing an answer, or at least by filing exceptions which were not separately heard. Here the defendant made his first appearance more than eleven months after final judgment was rendered, read and signed and almost three years after the suit was filed. When, as in the cited cases, the defendant has made an appearance he must be notified of the trial date before the merits can be tried. That is the basis *529 for the holding in the Griffing case. There (at 12S So. 497 and 498)
“ * * * plaintiffs filed a motion to homologate the procés verbal and obtained an order for a rule against defendant to show cause why the pro-cés verbal should not be homologated and the boundary between the * * * fixed and established in accordance with the survey.
“Service of the motion was accepted, and issuance of the rule waived by defendant, who again excepted and pleaded the prescription of 30 years.
“The minutes show that thereafter the case was fixed for trial on June 1st, and that on June 4th the rule was called for trial, and, defendant failing to appear, trial was proceeded with and judgment rendered approving and homologating the procés verbal and fixing and establishing the boundary * * * in accordance with the survey.”
On this statement of facts, the court held as quoted by the majority, that:
“The record does not show that the cause was fixed for trial on the merits, and the judgment rendered establishing the boundary line on the trial of the rule to homologate the procés verbal of the survey, in the absence of anything to show that defendant consented to the trial of the cause at that time, cannot be maintained.”
In my view this holding cannot be interpreted as prohibiting a confirmation of default where, as here, the defendant failed to file any exception or answer and where, as here, the defendant failed to make any appearance in answer to the required notice given by the surveyor notifying the defendant to be present for the actual survey.
In the Painten case, supra, the Supreme Court considered the question of whether or not an appeal could be taken from a judgment homologating the proces verbal prepared by the court appointed surveyor. It was held that the homologation was an interlocutory order from which an appeal may not be taken. The court reasoned that:
“In truth, while it has been considered as an accepted practice among the members of the bar to move for, and obtain orders of, homologation of surveyors’ reports in boundary suits, our attention has not been directed to, and we have been unable to find, any article of the Code of Practice or the Civil Code which requires that this procedure be taken. Nor do we see that any substantial advantage may be gained in an action of boundary (save possibly the approval of the survey as to form) by having the court summarily approve the surveyor’s report in advance of a trial on the merits forasmuch as the court is obligated, finally, to determine the -correctness of the survey in connection with the other evidence produced at the trial.”
It is, therefore, apparent that there is no need to hold a preliminary hearing for the purpose of homologating the proces verbal, and there can be no obj ection to homologat-ing the proces verbal and at the same time disposing of the case on the merits provided that the defendant is notified that the matter will be heard on the merits WHEN HE HAS FILED AN ANSWER OR EXCEPTIONS WHICH HAVE NOT YET BEEN OVERRULED. Plowever, when the defendant has not filed any pleadings in the suit, has not made any objection to the survey either before the court or to the surveyor who has properly notified him to appear at the time that the survey is to be commenced, and when a preliminary default has been timely entered, THEN, .the confirmation of default is the trial on the merits, and defendant is not entitled to notice before the confirmation of default. To hold otherwise is to read out of the Code of Practice Articles 310, 311 and 312.
*530 To hold as does the majority, that LSA-C.C. Arts. 839 and 841 require the filing of opposition in a suit to have a judicial fixing of a boundary before a final judgment can be obtained is to read into these two articles something which I do not find. In order to properly interpret LSA-C.C. Articles 839 and 841 which have been quoted in the majority opinion, it is necessary to consider the provisions of Articles 834 through 838.
“Art. 834. Whenever any surveyor is called on to fix the limits between adjacent estates, it is his duty to notify, in writing, the owners interested therein to be present at the work, if they think proper, and to inform them of the day and hour when he will proceed to fix the limits; and he is bound to make mention in his proces verbal of the notice he may thus have given, of the names of the parties notified, and of the date of notice; and the surveyor shall make a record of his proceeding, and of the plans drawn by him, in order that copies may be delivered to the parties who may require them.”
“Art. 835. If the parties thus notified, their representatives or attorneys in fact, appear at the fixing the limits, the surveyor appointed for the purpose is bound to demand of them their respective title papers, which they are bound to deliver to him in good faith, if they have them in their possession, in order that the surveyor may determine, by examining them, in what place to fix the boundaries.
“If the parties thus notified, or their representatives or attorneys in fact, refuse to deliver their title papers, the surveyor shall make mention of their refusal in his proces verbal, and of the cause they have alleged, if they have assigned any, for their refusal.”
“Art. 836. The surveyor shall not set up his boundaries, until he shall have finished the whole work, and until then he must mark his lines of separation by pickets stuck in the ground for that purpose.”
“Art. 837. If, before the surveyor has finished the work, or set up the boundaries, the parties interested, or any of them, shall make opposition thereto, the surveyor must desist, and refer the parties to the court, to have a decision on their respective rights, after having made mention of the opposition in his proces verbal, and the reason for the same, if any be alleged.”
“Art. 838. It is forbidden to every owner of lands to fix the limits between him and his adjoining neighbors, without giving them notice to be present; and, without this formality, every such proceeding is null, and will produce no effect against his neighbors, who, besides, have their action for damages against him, if they have suffered any injury thereby.”
In my view Article 839 must be interpreted along with Articles 837 and 838. It is my opinion that the opposition referred to in the first seventeen words of Article 839, (“When the limits have been fixed after due notice to the parties, and no opposition being made,”) is the opposition provided for in Article 837 and not an opposition which must be filed in court, as I understand the majority to hold. By failing to appear before the surveyor in answer to the notice required by Article 834, the defendant is not held to waive his right to object to whatever line the court appointed surveyor might determine. As stated in the next 26 words of Article 839, by failing to make the opposition which I understand to be contemplated in Article 837, “the parties do not thereby lose their right of resorting to a court of justice to rectify the operation if they think it for their interest;”. But these provisions contemplate the situation where issue has been joined. If the defendant has filed an answer, he must be notified before the case can be taken up on the merits. He may then elect to disregard the activities of the court appointed surveyor and fail to make opposition to the court appointed surveyor, and yet Article 839 reserves to the defendant under these circumstances the right of “ * * * *531 resorting to a court of justice to-rectify the operation * * But, in this event (where the defendant has not made any opposition as provided for in Article 837), “the limits will remain provisionally as fixed, until otherwise determined.” This last clause of Article 839, provides that where the defendant has failed to make any opposition to the court appointed surveyor’s work as permitted in Article 837, the line established by the court appointed surveyor “ * * * will remain provisionally as fixed * * * ” until a final determination of the line is made by the trial and appellate courts. I do not see how the reservation of the right of “resorting to a court of justice to rectify the operation” as stated in Article 839 can be interpreted as providing that there can be no confirmation of default which finally determines a judicial boundary.
I cannot agree with the effect of the majority opinion in holding that every judgment fixing boundaries under LSA-C.C. Articles 834 et seq. by confirmation of default is simply a provisional fixing of the boundary. Neither can I agree that a preliminary default entered three months after the defendant has been served is premature.
I, therefore, respectfully dissent.