**GENERAL FINANCE CO. OF LOUISIANA, Inc., v. EVANS (VERON, Intervenor).**

No. 17254.

Court of Appeal of Louisiana. Orleans.

June 13, 1940.

582

Prowell & McBride, of New Orleans, for appellant.

Delesseps S. Morrison, of New Orleans, for intervenor-appellee W. P Veron.

McCALEB, Judge.

On December 27, 1938, a concern named Evans Sales Company borrowed from the plaintiff, General Finance Company of Louisiana, Inc., a corporation engaged in the business of lending money, the sum of $282.50 and, as security for the payment of the debt, it executed in favor of the finance company a chattel mortgage upon a certain Chevrolet sedan automobile owned by it. This act of mortgage was passed before R. Emmet Mahoney, notary public, and was duly recorded in the office of the Recorder of Mortgages for the Parish of Orleans. In executing the act, Evans Sales Company appeared through its duly authorized agent, J. L. Evans, and it is stated therein that the mortgagor is a resident of Port Sulphur, Louisiana, in the Parish of Plaquemines.

On March 1, 1939, the Evans Sales Company sold the automobile, which it had previously mortgaged to General Finance Company, to John H. Truett, Jr., proprietor of Truett Used Car Market, by written bill of sale made in accordance with the provisions of Act No. 178 of 1936. In this bill of sale, Evans Sales Company was likewise represented by J. L. Evans and it made affidavit to the effect that the property sold by it was free from all liens, mortgages and privileges. On March 14, 1939, John H. Truett, Jr., sold the Chevrolet car to one Wallace P. Veron and executed a bill of sale, in accordance with the provisions of law, in which affidavit was made that the property transferred was free from any encumbrance whatever.

Subsequent to the time Veron purchased the automobile from Truett, J. L. Evans, who represented Evans Sales Company throughout the above stated transactions, absconded. Upon the failure of Evans Sales Company to liquidate its obligation to General Finance Company, the latter caused an investigation to be made and discovered that the mortgaged automobile was in the possession of Veron and thereupon, on April 27, 1939, it caused the chattel mortgage to be recorded in Plaquemines Parish. On May 10, 1939, the finance company instituted this suit for executory process upon the mortgage in its favor. It alleged the execution of the mortgage and the default of Evans in paying the debt; that Evans was in truth the owner and proprietor of Evans Sales Company and that, as such, he should be made party defendant to the proceeding.

In conformity with the prayer of the petition, a writ of executory process was issued by the court and the Civil Sheriff for the Parish of Orleans, in obedience thereto, seized the mortgaged automobile in the hands of Veron.

In due course, Veron intervened in these proceedings, claiming ownership of the automobile, averring that he purchased it in good faith and that the mortgage held by the finance company was invalid as to him. By supplemental petition, he sought to enjoin the seizure and sale of the car principally upon the ground that, since it had been stated in the act of mortgage that Evans Sales Company, the mortgagor, was a resident of Port Sulphur, Louisiana, it was incumbent upon the finance company to have recorded the mortgage in Plaquemines Parish and that its failure to do so, until a date subsequent to the time he had, in good faith, acquired title to the vehicle, precluded it from now contending that the mortgage was effective and binding upon him.

In accordance with the prayer of Veron's petition, a rule nisi was issued by the trial court and the Civil Sheriff for the Parish of Orleans and the finance company were ordered to show cause why an injunction should not issue restraining the sale of the automobile seized under the writ of executory process. On the date of the hearing of the rule nisi, the finance company and Veron entered into a stipulation whereby it was agreed that the evidence to be taken at the trial of the rule should be considered by the court as a trial of the case on its merits and the court was requested to render judgment accordingly.

After hearing the evidence submitted by the respective parties, the district judge issued an injunction. He decreed that Veron was the owner of the automobile seized under the writ of seizure and sale, that said automobile is not subject to execu-

tory process and he dismissed plaintiff's claim for a lien and privilege thereon. He further ordered that the automobile be forthwith restored to the possession of Veron and reserved to the latter the right to proceed by appropriate action to recover such damage as he might have sustained as a result of the wrongful seizure. Plaintiff has prosecuted this appeal from the adverse decision.

A careful study of the record in this case has convinced us that the result reached by the trial judge is correct. At the outset of the argument in this court, counsel for Veron contended that the order for executory process was improvidently granted because the mortgage executed by the Evans Sales Company, wherein it was represented by its duly authorized agent, J. L. Evans, is not in itself authentic proof of plaintiff's right to proceed via executiva in that there is nothing to show that Evans, the agent, had any authority to encumber the property belonging to the mortgagor.

■ It seems to have been well settled by the pronouncements of the Supreme Court that a writ of executory process may not legally issue unless it appear that the documents upon which the writ is founded are executed by authentic act. It has been held on many occasions that, where a mortgage by authentic act is executed by an agent for the mortgagor, whose authority to bind his principal is not shown by authentic evidence, the writ of executory process may not issue. See Chambliss v. Atchison, 2 La.Ann. 488; Dosson, Curator v. Sanders, 12 Rob. 238; Gaudoz v. Blanque, 23 La.Ann. 520; Crescent City Bank v. Blanque, 32 La.Ann. 264; and Bank of Leesville v. Wingate, 123 La. 386.

In Dosson, Curator v. Sanders, the pertinent part of the syllabus by the court reads: "The authentic evidence required to authorize the issuing of an order of seizure and sale must be complete so far as relates to the debt. Thus where a mortgage by authentic act was executed under power of attorney, or where a note secured by such a mortgage has been assigned, the power and the assignment must be proved by authentic acts."

And in Crescent City Bank v. Blanque, the court, in annulling the writ of executory process, stated: "The defendant having appealed, assigns as error, patent on the face of the record, the want of authentic evidence of the authority of the agent. That such evidence was necessary, is no longer an open question."

■ Applying the foregoing jurisprudence to the facts of the case at bar, it will be readily seen that the writ of executory process was improvidently issued in the court below. The chattel mortgage, as we have stated, was executed by Evans Sales Company appearing through its duly authorized agent, J. L. Evans. The record does not contain any proof whatsoever that Evans had authority to act for and on behalf of Evans Sales Company. In fact, the contention of the finance company is that Evans is really the mortgagor and that he was doing business under the trade name of Evans Sales Company. But no evidence has been submitted by it to sustain this contention and we have no means of determining whether Evans was operating the business for his own account or whether the Evans Sales Company was a co-partnership or a corporation. However, whatever be the legal status of Evans Sales Company, it seems fairly certain that, if Evans was the owner of it and operating as an individual under that trade name, he would not have appeared in the act of mortgage as its duly authorized agent.

It should be remarked, in deference to the district judge, that the question regarding the illegal issuance of the writ was not raised by counsel for Veron at the trial below and that it was not until the matter was argued here that counsel for the first time contended that the writ was improvidently granted.

■ While we find that Veron had the right to challenge the issuance of the writ at any stage of the proceedings, since the lack of the required authentic proof to support its validity is apparent on the face of the record (see Chambliss v. Atchison, supra), an investigation of the proceedings in the court below shows that the case was actually tried upon its merits and that the judge not only set aside the writ of seizure and sale but that he also held that Veron was entitled to the possession of the automobile free from any encumbrances whatever. In view of this, it is necessary that we discuss the merits of the claims of the respective parties and decide whether or not the mortgage held by the finance company is enforcible against the automobile which is now in the hands of

Veron. This question relates solely as to whether the mortgage has been properly recorded forasmuch as Veron as well as his vendor, Truett Used Car Market, are unquestionably purchasers for value in good faith and without notice.

The Chattel Mortgage Law, Act No. 198 of 1918, as amended by Section 1 of Act No. 178 of 1936, provides that the mortgage, in order to affect third persons without notice, "shall be recorded in the office of the Recorder of Mortgages in the Parish where the' Act of mortgage is executed, *and also at the domicile of the mortgagor.*" (Italics ours)

It is Veron's contention that,. since it is stated in the act of mortgage that Evans Sales Company is a resident of Port Sulphur, Louisiana (in Plaquemines Parish), it was encumbent upon the mortgage, in order to render the obligation effective as against third persons, to have caused the act to be recorded not only in the Parish of Orleans where it was executed but also in the Parish of Plaquemines where the mortgagor was domiciled.

On the other hand, the finance company maintains that Evans Sales Company is not the mortgagor; that the real mortgagor is J. L. Evans; that he operated his business in Plaquemines Parish under the name of Evans Sales Company; that, in truth and in fact, Evans was domiciled in the City of New Orleans where the act of mortgage was passed and that, therefore, it fully complied with the requirements of the chattel mortgage statute when it had the mortgage recorded in Orleans Parish.

These postulations of the finance company are not borne out by the evidence. In the act of mortgage, it is declared: "Personally came and appeared Evans Sales Company by its duly authorized agent, J. L. Evans resident of Port Sulphur * * *". The act is signed "Evans Sales Company by J. L. Evans". This clearly indicates to our minds that Evans Sales Company was either a co-partnership or a corporation represented by its agent, J. L. Evans. It is true that the finance company charges in its petition that J. L. Evans is the owner of Evans Sales Company and that he operated his business under that trade name. But there is not a scintilla of evidence contained in the record to substantiate this allegation.

 The proof in the record does show, however, that the business conducted by the Evans Sales Company was located at Port Sulphur, Louisiana. Therefore, it was encumbent upon the finance company, in order to affect the title to the automobile which was acquired by Veron as a purchaser in good faith, to have had its mortgage duly recorded in Plaquemines Parish prior to the date Veron bought the car. This it failed to do.

 Moreover, even if it be admitted for the sake of discussion that J. L. Evans and not the Evans Sales Company is the mortgagor, as contended for by the finance company, we think that the evidence heard at the trial authorizes the conclusion that his legal domicile was in Plaquemines Parish. The only testimony submitted by the finance company, in support of its position that Evans was domiciled in Orleans Parish, is that of Evans' wife. Mrs. Evans stated that, when she first married, she and Evans lived in Algiers, Louisiana; that they subsequently moved to Birmingham, Alabama, and later back to Algiers; that still later she moved to Waveland, Mississippi, and that, at that time, Evans lived in Port Sulphur. She further states that in October 1937 she returned to Algiers, taking up her residence on Bodenger Boulevard; that, at that time, Evans was in Port Sulphur "but he helped us move and get things straightened out" and "he came up and stayed with me and I went down and stayed with him" and that, when Evans came to New Orleans, he remained "two or three days at a time". Mrs. Evans was unable to say where her husband was living in December 1938 when the act of chattel mortgage was executed and she did not know whether he was registered as a voter in Plaquemines Parish or not though she had once heard him say that he was. She also stated that she did not know whether he voted in Plaquemines Parish or Orleans Parish.

A registration certificate, which was issued to Evans in 1935 by the Registrar of Voters for the Parish of Orleans and a poll tax certificate issued in 1936 from the Civil Sheriff were offered in evidence by the finance company. These documents give Evans' address as 428 Oliver Street. In 1938, the New Orleans City Directory contained Evans' name as a resident of 1715 Bodenger Boulevard and the telephone directory of the same year listed his name as a subscriber to a telephone at 1403 Bodenger Boulevard.

We do not think that the foregoing evidence is sufficient to warrant the finding that Evans' legal domicile was in Orleans Parish at the time the mortgage was executed. The most that can be said is that it shows that Evans alternately resided in Plaquemines Parish, where the business of Evans Sales Company was conducted, and in New Orleans where he maintained a residence for his wife. Article 38 of the Revised Civil Code reads as follows: "The domicile of each citizen is in the parish wherein he has his principal establishment.

"The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as his principal establishment, at the option of the persons whose interests are thereby affected."

In the case at bar, it may not be said that, because Evans resided alternately in the Parishes of Plaquemines and Orleans, the finance company, whose interest is affected thereby, may claim that the recordation of the mortgage in Orleans Parish is sufficient for the reason that Veron has just as much right, as an innocent party in good faith, to also maintain that Evans' principal establishment is in the Parish of Plaquemines. In this state of affairs, it is well to examine the other applicable articles of the Civil Code relating to domicile. Article 41 provides that a change of domicile from one parish to another is produced by the act of residing in another parish with the intention of making one's principal establishment there. And Article 42 declares:

"This intention is proved by an express declaration of it before the recorders of the parishes, from which and to which he shall intend to remove.

"This declaration is made in writing, is signed by the party making it, and registered by the recorder."

Article 43 of the Code, relating to the proof of intention to change domicile, states:

"In case this declaration (provided for in Article 42) is not made, *the proof of this intention shall depend upon circumstances*." (words in parenthesis and italics ours)

Evans never at any time filed an express intention, as provided for by Article 42 of the Code, to remove his domicile from Orleans Parish to Plaquemines Parish. But, as we have heretofore shown, he did move from New Orleans, sometime after the year 1936, to Plaquemines Parish where the finance company contends he engaged in operating the business known as Evans Sales Company. He thereafter resided alternately in that parish and in Orleans Parish. Coupled with this fact is the circumstance of his declaration in the act of mortgage that he was a resident of Port Sulphur in Plaquemines Parish. This recital is a strong indication of Evans' intention to make Plaquemines Parish his domicile and since, under the provisions of Article 43 of the Code, proof of the intention to change domicile may be determined by examination of the circumstances of each particular case, we hold that his legal domicile was in Plaquemines Parish.

Furthermore, it is to be taken into consideration that, when the mortgage was executed by Evans Sales Company, the finance company was put on notice by the recital in the deed to the effect that Evans resided in Plaquemines Parish. Under such circumstances, it should be estopped from now contending that, notwithstanding his declaration of residence (which we think is synonymous with domicile since we believe it was intended in that sense), his legal domicile was in Orleans Parish. We are here dealing with the rights of two innocent parties, one of whom must suffer as the result of the fraud of another. In such situations, aside from the legal considerations, the rule in equity is well established that the party who was in a position to prevent the perpetration of the fraud must bear the loss. No reason or explanation is offered by the finance company as to why its mortgage was not recorded in the Parish of Plaquemines. It was fully advised by the recital in the act that Evans was domiciled in Plaquemines Parish and its failure to record the mortgage in that parish is the underlying cause of the predicament in which it now finds itself.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

WESTERFIELD, Judge. I concur in the decree.