158 So.2d 228 (1963)
Oliver C. TAPP, Plaintiff-Appellant,
v.
GUARANTY FINANCE COMPANY, Inc., and Elmer A. Uffman, Defendants-Appellees.
No. 5963.
Court of Appeal of Louisiana, First Circuit.
November 12, 1963.
Rehearing Denied December 16, 1963.
Writ Refused February 14, 1964.
*229 Ralph Brewer, Baton Rouge, for appellant.
Kennon, White & Odom, by John S. White, Jr., Watson, Blanche, Wilson, Posner & Thibaut, by Charles W. Wilson, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
ELLIS, Judge.
Plaintiff, Oliver C. Tapp, purchased an automobile on August 11, 1956 from Leland Mims Used Cars, represented by Leland G. Mims. The unpaid portion of the purchase price was represented by a promissory installment note payable to Leland Mims Used Cars and paraphed for identification with a chattel mortgage on the automobile. The note is endorsed by "Leland Mims Used Cars, by Leland G. Mims" to the order of Guaranty Finance Co., Inc.
In Suit No. 60,122 on the docket of the district court for the Parish of East Baton Rouge, Guaranty Finance obtained an order for executory process, seized and sold the automobile with appraisement.
It appears from the face of the record in that foreclosure proceeding that *230 the endorsement from Leland Mims Used Cars to Guaranty Finance Co., Inc. was not in authentic form and, therefore, under the well-established jurisprudence of this state, executory process was not available to the plaintiff in that instance. Accordingly, the Sheriff's sale was null and void. Miller, Lyon & Company v. Cappell, 36 La.Ann. 264, Art. 2635, LSA-Code of Civil Procedure.
Also in Myrtle Grove Packing Co. v. Mones, 226 La. 287, 76 So.2d 305, the Supreme Court reiterated the well-settled law as to executory process in no uncertain language, viz.:
"Executory process, under which a creditor is permitted, without citation or the usual legal delays, to seize the property of the debtor in satisfaction of a claim, is a harsh remedy specifically sanctioned by the Constitution, Section 44, of Article VII, and is permitted in only two instances, the one pertinent to the instant case being where it is supported by an act importing a confession of judgment. Article 732 of the Code of Practice. Consequently, there must be strict compliance with the letter of the law governing this severe remedy. Courtney v. Andrews, 10 Rob. 180; Cumming v. Archinard, 1 La.Ann. 279; Robb v. Potts, 2 La.Ann. 552; Pele v. Meaux, 17 La.Ann. 58; Ricks v. Bernstein, 19 La.Ann. 141; Calhoun v. Mechanics' & Traders' Bank, 30 La.Ann. 772; Bank of Leesville v. Wingate, 123 La. 386, 48 So. 1005; and General Contract Purchase Corp. v. Doyle, La.App., 56 So.2d 432. Further, it is well settled by authorities that are legion in our jurisprudence that the writ of seizure and sale may issue only upon the presentation to the judge of the note sued on and the act containing the confession of judgment. Day v. Fristoe, 7 Mart., O.S., 239; Wray v. Henry, 10 Mart., O.S., 222; Tilghman v. Dias, 12 Mart., O.S., 691; Harrod v. Voorhies' Adm'x, 16 La. 254; Tildon v. Dees, 1 Rob. 407; Dodd v. Crain, 6 Rob. 58; Dosson v. Sanders, 12 Rob. 238; Cumming v. Archinard, 1 La.Ann. 279; Chambliss v. Atchison, 2 La. Ann. 488; French v. Mechanics' & Traders' Bank, 4 La.Ann. 152; Commercial Bank of New Orleans v. Poland, 6 La.Ann. 477; Tufts, Fermor & Co. v. Beard, 9 La.Ann. 310; Pele v. Meaux, supra; De Brueys v. Freret, 18 La.Ann. 80; Peyroux v. Lacoste, 18 La.Ann. 626; Gaudoz v. Blanque, 23 La.Ann. 520; Parkerson v. Grundy, 23 La.Ann. 530; Fazende v. Flood, 24 La.Ann. 425; Burns v. Naughton, 24 La.Ann. 476; Crescent City Bank v. Blanque, 32 La.Ann. 264; Wood & Roane v. Wood, 32 La.Ann. 801; Miller, Lyon & Co. v. Cappel & Curry, 36 La.Ann. 264; Van Raalte v. Congregation of the Mission, 39 La.Ann. 617, 2 So. 190; Bonnecaze v. Lieux, 52 La.Ann. 285, 26 So. 832; Bank of Leesville v. Wingate, supra; Interstate Trust & Banking Co. v. Powell Bros. & Sanders Co., 126 La. 22, 52 So. 179; Osborne v. Mossler Acceptance Co., 214 La. 503, 38 So.2d 151; Commercial Credit Co. v. Melba Candy Co., 3 La.App. 267; Terrel v. Ferguson, 4 La.App. 339; General Finance Co. of La. v. Evans, La.App., 196 So. 581; and General Contract Purchase Corp. v. Doyle, supra. And where there is a discrepancy between the note sought to be collected and the note described in the mortgage, this discrepancy is fatal to the action. Chambliss v. Atchison; Courtney v. Andrews; Ricks v. Bernstein; Miller, Lyon & Co. v. Cappel & Curry; Van Raalte v. Congregation of the Mission, all supra; Taylor & Husband v. Boedicker & Badenhausen, 21 La.Ann. 170; Hackmuller v. Figueroa, 125 La. 307, 51 So. 207; Kreher v. Theisman's Estate, 125 La. 600, 51 So. 656; Bass v. Barthelemy, 134 La. 319, 64 So. 126; and Southern Hardware & *231 Woodstock Co. v. Smith, 11 La.App. 49, 123 So. 403."
On May 23, 1957, fifteen days after the Sheriff's sale, Guaranty Finance Co., Inc. sued Tapp in Suit No. 60,681 for a deficiency judgment, which was rendered after personal service on the defendant and by default on June 21, 1957.
On June 8, 1960 Guaranty Finance Co. Inc., and Elmer A. Uffman executed a document purporting to be a transfer of the deficiency judgment in suit No. 60,681 to Mr. Uffman, and thereafter, on June 13, 1960 a third suit, No. 76,050, was brought by Elmer A. Uffman against Tapp seeking to garnish the latter's wages. Doherty Hardware Company was made garnishee and answered, showing that the judgment debtor was employed by it.
On July 28, 1960 this, the fourth suit, No. 76,873 was filed by Tapp against Guaranty Finance Company, Inc. and Elmer A. Uffman, seeking to enjoin the garnishment of his wages and further seeking an annulment of the deficiency judgment rendered June 21, 1957. Judge Johnson granted a preliminary injunction halting the garnishment. Thereafter, on the merits, Judge LeBlanc denied a permanent injunction and refused to set the deficiency judgment aside.
It appears from the record that the plaintiff herein, Oliver C. Tapp, did not consult an attorney prior to the instant suit and took absolutely no action in any of the previous proceedings. The nullity of the foreclosure proceeding under executory process is complained of here for the first time.
It cannot be seriously disputed that the sale under executory process was null and that had the debtor sought to enjoin it, he would have been successful. Furthermore, had Tapp contested the demands for a deficiency judgment or had he appealed from the deficiency judgment rendered against him by default, he would have been successful. Mack Trucks Inc. v. Dixon, La.App., 142 So.2d 605; Doherty v. Randazzo, La.App., 128 So.2d 669.
In the last cited case the Fourth Circuit Court of Appeal in considering an action seeking a judgment of nullity of a seizure and public sale of property by executory process held:
"However, as a general rule, a mortgagor is estopped from complaining that the order for executory process was signed without ample authentic evidence once the property is adjudicated.4 An exception thereto was initially
"4. Miller v. People's Homestead & Savings Association, La.App., 161 So. 656; Franek v. Brewster, 141 La. 1031, 76 So. 187.
created in the case of Viley v. Wall5 and the validity thereof was
"5. 1923, 154 La. 221, 97 So. 409, 411.
recognized in two subsequent cases.6
"6. Burden v. People's Homestead and Savings Association, La.App., 167 So. 487; Continental Securities Corp. v. Wetherbee, 1937, 187 La. 773, 175 So. 571.
In the Viley case the Court rationalized thusly:
"`In support of the exception of no cause of action, defendants contend that, although the petition alleges that plaintiff did not learn of the proceedings for the foreclosure of the mortgage and sale of the property until a part of it had been sold, as to the portion covered by this suit it is alleged that plaintiff did know of said proceedings before the sale, and, having failed either to appeal from the order of seizure and sale or to enjoin the same, he is now barred from and the petition discloses no cause of action for annulling the mortgage and sale; in other words, that the sole remedy in such proceedings is to appeal or enjoin.
"`We have carefully examined the jurisprudence and have been unable to find any decision sustaining this view; nor have defendants cited any case *232 so holding where the property had not passed out of the hands of the purchaser at such sale, and who was charged with knowledge of and participation in the fraud and conspiracy, or other nullities or illegalities upon which the same was attacked. On the other hand, our reports are full of cases where such suits have been brought and decided, in which the proceedings and sales under executory process have been assailed after the sale, and the rights of the parties determined by the merits of each case.' (Emphasis added)
"Therefore, plaintiffs must bring their case within this exception in order to have a standing in court.
"Defendant herein was both the mortgage creditor who initiated the executory proceedings and the adjucatee at the sale of the property. Not only is the purchaser charged with the knowledge of the nullity upon which the order was improvidently issued, but he was also responsible for the fatal defect, i. e., failure to produce authentic evidence of the act of mortgage. Therefore we conclude that the record supports a finding that the plea of estoppel is without merit in the instant proceedings,7 (note deleted) and further, that the order for executory process, improvidently issued without authentic evidence to support it should be properly nullified because plaintiff in that proceeding failed to meet the strict requisites that would entitle him to this harsh remedy."
The present action of nullity is between the mortgage creditor who initiated the executory proceedings and who is charged with the knowledge of the nullity upon which the order was improvidently issued and who was also responsible for the fatal defects which nullifies the executory process, and the plaintiff debtor. We are therefore of the opinion that plaintiff herein is within the exception to the general rule and entitled to bring the present suit for nullity of the deficiency judgment.
We believe that counsel for the plaintiff has correctly stated the issue before this court at page fourteen of his brief, as follows:
"The only real question is whether plaintiff's nullity action came too late * * *".
Judge LeBlanc, in his written reasons for judgment, indicated that to allow execution of a judgment to be enjoined on grounds which could have been pleaded before judgment, would foster and multiply litigation and permit dissatisfied litigants to try cases over and over again. Certainly this is no small danger. However:
"The courts of this state will not hesitate to afford relief against judgments, irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable. Our courts will follow the general principles of equity jurisprudence applied by the equity courts of the other states of this country in actions of this character." Succession of Gilmore, 157 La. 130, 102 So. 94, 95.
In the case of Emuy v. Farr, 125 La. 825, 51 So. 1003, it was held that a judgment rendered on insufficient evidence is not, for that reason, subject to attack in any action for nullity. It has also been repeatedly held that an action for nullity is not a substitute for an appeal. Accardo v. Dimiceli, 226 La. 435, 76 So.2d 521. The case at bar, however, does not fall into either of those categories.
The executory proceeding was null on its face and the deficiency judgment rendered subsequently and grounded on the null executory proceeding, is likewise null. The Legislature in LSA-R.S. 13:4106 has *233 expressed the strong public policy that deficiency judgments are prohibited except in cases where the sale has been made with legal appraisement. An illegal and null order for executory process cannot serve as the basis for a legal appraisal and sale, though, logically, a legal sale under executory process could contain an illegal appraisal.
We believe that the plaintiff is clearly entitled to maintain his action for nullity under Article 2004 of the LSA-Code of Civil Procedure. Article 2004 provides in effect that judgments obtained by "fraud or ill practices" may be annulled provided the action of nullity is brought within one year of the plaintiffs' discovery of "fraud or ill practice." It is evident from the text of the article that there is a distinction between fraud on the one hand and ill practices on the other. The article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment, of some legal right, and where the enforcement of the judgment would be unconscientious and inequitable. In this case the defendant has been deprived of the legal right to be free of a deficiency judgment based on a sale under executory process which was null and which did not constitute a sale with legal appraisal as required by LSA-R.S. 13:4106; Mack Trucks Inc. v. Dixon, La.App., 142 So. 605; Soileau v. Pitre, La.App., 79 So.2d 628; Futch v. Gregory, La.App., 40 So.2d 830.
In Alonso v. Bowers, 222 La. 1093, 64 So.2d 443, the Supreme Court affirmed the decision of the district court which declared the nullity of a judgment rendered on open account. The "ill practice" complained of was that the plaintiff's amending petition, which cured the defendant's exception, had been served on the defendant rather than on his attorney. This allowed the plaintiff to secure a default judgment 46 days later without opposing counsel having gained any knowledge that his exception had been cured.
The Court in the Bowers case stated:
"According to Article 605 of the Code of Practice, the causes for which the nullity of a definitive judgment may be demanded are those that are relative to form and those that appertain to the merits of the question tried. According to Article 607, one of the cases in which such judgment may be annulled is where it appears that it was obtained by ill practices on the part of the party in whose favor it was rendered. Under the jurisprudence any improper practice or procedure which enables a party to obtain a definitive judgment comes within the meaning of this article. The courts have looked at each case from a purely equitable viewpoint to ascertain whether allowing the judgment to stand would be inequitable or unconscionable in view of the practice or procedure which enabled the party to obtain such judgment. See Lacoste v. Robert, 11 La. Ann. 33; City of New Orleans v. Le-Bourgeois, 50 La.Ann. 591, 23 So. 542; Tarver v. Quinn, 149 La. 368, 89 So. 216; Succession of Gilmore, 157 La. 130, 102 So. 94; Walsh v. Walsh, 215 La. 1099, 42 So.2d 860; Coltraro v. Chotin, 1 La.App. 628.
"In Succession of Gilmore, supra [157 La. 130, 102 So. 95], this Court said:
"`* * * The remedy given by said article [607] * * * is not restrictive. The courts of this state will not hesitate to afford relief against judgments, irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable. Our courts will follow the general principles of equity jurisprudence *234 applied by the equity courts of the other states of this country in actions of this character * * *.'"
We will now consider whether plaintiff's action under Articles 2004 of the LSA-Code of Civil Procedure is barred by the prescriptive period set forth in said article that "An action to annul a judgment on these grounds must be brought within one year of discovery by the plaintiff in the nullity action of the fraud or ill practices." The source of this Article was Code of Practice Article 607, 613, and under the official revision comment we find that these source provisions were combined to provide the grounds of action as well as the time within which the action must be brought. If we are correct in our holding that the foreclosure proceedings, including the attempted appraisement of plaintiff's property were null, void and of no legal effect, then it follows that under LSA-R.S. 13:4106 "* * * the debt nevertheless shall stand fully satisfied and discharged, and such mortgagee or other creditor shall not thereafter have the right to proceed against the debtor or any other of his property for such deficiency, in any manner whatsoever." Therefore, the Legislature has absolutely prohibited a mortgagee or other creditor from proceeding against the debtor or any other of his property for any deficiency judgment in the absence of a legal appraisement. This is a prohibitory law and under LSA-Civil Code, Article 12, "Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed."
In the case of Phillips v. Bryan, 172 La. 269, 134 So. 88, in considering a plea of prescription of one year against an action to annul a judgment under Code of Practice Article 613 (now incorporated in Code of Civil Procedure Article 2004) and which it found to be in contravention of a prohibitory law, the Supreme Court of Louisiana held:
"The prescription of one year against an action to annul a judgment obtained by fraud, or in consequence of the loss of a receipt, as provided for in article 613 of the Code of Practice, is not applicable to a confession of judgment made in violation of a law of public policy, because a transaction of that unlawful character cannot be made valid by ratification, either express or tacit. By the same token, we agree with the district judge that the plea of estoppel was not well founded. In fact, the plea was not sustained by a preponderance of evidence."
Again in Cilluffa v. Monreale Realty Company Inc., 209 La. 333, 24 So.2d 606, the Court in considering a plea of estoppel stated:
"The plea of estoppel is urged for the reason that plaintiff, Gaetano Cilluffa, did not protest or object to the seizure of all his right, title, and interest in the succession of his mother, Vincenza Giordano, notice of said seizure having been served on an attorney-at-law; that this notice of seizure shows knowledge on the part of said plaintiff of the rendition of the judgment against him which he now seeks to have annulled and set aside, and that plaintiff's allegation that he had no knowledge of such judgment until December 1, 1942, is contradicted by the records.
"Having concluded that, under the allegations of plaintiff's petition, the confession of judgment on which judgment was obtained violated the prohibitory provisions of the Constitution, we are of the opinion that this plea also is without merit, under the provisions of Articles 11 and 12 of Dart's Revised Civil Code, which read as follows:
"`11 (11) (N6). Waiver of laws. Individuals cannot by their conventions, derogate from the force of laws made for the preservation of public order or good morals. * * *'
"`12 (12). Acts contravening prohibitory law invalid.Whatever is done in contravention of a prohibitory law *235 is void, although the nullity be not formally directed.'
"It is well settled that an agreement void as against public policy or because prohibited by law cannot be rendered valid by invoking the doctrine of estoppel.
"`An acknowledgment can never be invoked to maintain a condition or state of things created in violation of a prohibitory law.' Factors' & Traders' Ins. Co. v. New Harbor Protection Co. et al., 37 La.Ann. 233.
"`* * * the courts * * * recognize the doctrine that estoppel cannot be invoked to impair the force and effect of a prohibitory law.' Rhodes v. Miller, 189 La. 288, 179 So. 430, 432.
* * * * * *
"We do not know upon what grounds the trial judge sustained the exception of no cause or right of action and dismissed plaintiff's suit, as the record contains no written reasons for judgment. However, if plaintiff's suit, was dismissed under Article 613 of the Code of Practice, which provides that an action to annul a judgment on the ground of fraud must be brought within the year after the fraud has been discovered, this article has no application in this case under the decision in the case of Phillips v. Bryan, 172 La. 269, 134 So. 88, 89.
"In that case, in holding that a confession of judgment in a note was null because made in violation of a prohibitory law where the debt was not due but the note contained a statement that it was due, this court said:
"`The prescription of one year against an action to annul a judgment obtained by fraud, or in consequence of the loss of a receipt, as provided for in article 613 of the Code of Practice, is not applicable to a confession of judgment made in violation of a law of public policy, because a transaction of that unlawful character cannot be made valid by ratification, either express or tacit. By the same token, we agree with the district judge that the plea of estoppel was not well founded.'"[1]
Therefore, in view of the absolute nullity of the executory proceedings, including the seizure, appraisement and sale of plaintiff's property, which constituted a sale without appraisement, and the subsequent deficiency judgment being in contravention of a prohibitory law, LSA-R.S. 13:4106, supra, it is null and the prescription of one year as set forth in Article 2004 of the Code of Civil Procedure is not applicable to plaintiff's action of nullity herein under the authorities above cited.
It becomes necessary at this point to consider whether the alleged assignment and conveyance of the deficiency judgment deprived the plaintiff of his right to maintain his cause of action for nullity under Article 2004. We believe that it did not.
In his written reasons for judgment after the trial of the rule for a preliminary injunction, Judge Johnson viewed the document as creating an agency relationship rather than as actually being a sale or assignment of ownership of the judgment. The facts in this case substantiate that view.
Guaranty Finance does not appear to be a disinterested party in this action, as they would be had they really conveyed the deficiency judgment rendered in their favor to Uffman. On the contrary, counsel for Guaranty Finance have actively and ably defended this proceedings. The garnishment was filed by the collection agency with which Uffman alleges ownership. In addition, no consideration, other than a "good and valuable" one is disclosed by the alleged act of assignment.
*236 Having determined that, under the particular facts and circumstances of this case, the alleged transfer actually created only an agency relationship between Guaranty Finance and Uffman, it is unnecessary to consider whether or not an actual conveyance of the judgment to a third party would have precluded the plaintiff's action for nullity under Article 2004.
On the question of damages, the plaintiff's action comes too late to recover any sum for the wrongful seizure and sale of his automobile. That action prescribes in one year as does any cause of action arising ex delicto in Louisiana Article 2315, LSA-C.C., Hernandez v. Harson, 237 La. 389, 111 So.2d 320. Plaintiff in the case at bar sought no relief by a suspensive appeal nor injunctive process from the order of executory process, seizure and sale of his automobile as a result of the suit which was filed on April 9th, 1957. Therefore, his action for damages as a result of illegal orders, seizure and sale of his property, prescribed in one year from the date of the illegal seizure. Under the Hernandez case, had there been litigation, the prescriptive period would have been one year after the final termination of such litigation. The present suit seeking the annulment of the deficiency judgment obtained in suit No. 60,681 filed on May 23rd, 1957 and judgment rendered on June 21st, 1957 was not filed until July 28th, 1960. Therefore, his claim for damages under Article 15 of the amended and supplemental petition for the value of the automobile illegally, seized, for humilitiation, embarrassment and mortification for the illegal seizure of the automobile, and for the illegal sale of the automobile, and for the loss of use and enjoyment of the automobile illegally seized and sold has long since prescribed.
Plaintiff in the amended and supplemental petition filed herein on September 15, 1960 in Article 16 set forth his claim for damages as the result of the alleged unlawful seizure of his wages as follows:

"The seizure of petitioner's wages was likewise illegal and unlawful, by
which illegal and unlawful seizure petitioner was damaged by defendants
Guaranty Finance Company Inc. and Elmer A. Uffman, in solido, in the
following respects:
"(1) Damages to petitioner for the value of the property illegally
 seized-----------------------------------------------------------$ 500.00
"(2) Damages to petitioner for humiliation, embarrassment and
 mortification for the illegal seizure of wages-------------------$1000.00
"(3) Damages to petitioner for the loss of use of illegally
 seized wages-----------------------------------------------------$ 500.00
"(4) Damages to petitioner for continued illegal seizure of wages
 after Court prohibited seizure and despite temporary restraining
 order and injunction---------------------------------------------$3000.00
"(5) Damages to petitioner for humiliation, embarrassment, and
 mortification for continued illegal seizure of wages-------------$3000.00
"(6) Damages to petitioner for loss of wages seized and retained
 by defendants despite the Court order and injunction-------------$1000.00
 ______________
Or for a total of-----------------------------------------------------$9000.00"

The facts reveal that $160.00 had been deducted under the garnishment by Tapp's employer, Dougherty Hardware Company, composed of $40.00 for June, $80.00 for July, and $40.00 for August. The last deduction from plaintiff's pay was August *237 15th as a result of a notice from the attorneys for defendant Uffman that the garnishment had been "dropped". This $160.00 was then applied to reduce an advance that plaintiff had secured previously from his employer. Under this testimony he would not be entitled to damages set forth in (1), (3), (4) and (6). The money was used exactly as it would have been used had it not been garnished and seized and there is no testimony whatsoever that he was damaged for any continued illegal seizure of these wages, and of course, he did not lose the wages as they would not have been paid to him in any event but would have been applied on his indebtedness, as was done when the garnishment was released.
As to items (2) and (5) plaintiff testified that as a result of the garnishment he was embarrassed, had a fear of "losing everything that I owned, my new home that I just bought, my wife was deprived of medicine that she should have had and because she had been operated on we didn't have money to spend for it * * *".
In Scott v. Columbia Finance Corporation, La.App., 119 So.2d 548 damages in the sum of $100.00 were awarded for a wrongful garnishment and the employee was in no danger of discharge and only slight embarrassment resulted from the illegal seizure. A like amount was awarded in Williams v. Credit Service Corp., La. App., 113 So.2d 319 in which the plaintiff failed to establish actual damage and the court found that it well could be considered to have caused plaintiff some inconvenience and embarrassment and the possible loss of employment. There was no question as to loss of employment in this case. However, we believe that $100.00 damages for embarrassment, humiliation and mortification would be in accordance with the amounts awarded in similar cases and particularly where there are no actual facts to substantiate the plaintiff's own testimony that he was so humiliated, embarrassed and mortified.
Accordingly, the judgment of the lower court is reversed and that certain judgment rendered in Suit No. 60,681 on June 21st, 1957 in and for the 19th Judicial District Court of the Parish of East Baton Rouge, State of Louisiana entitled Guaranty Finance Company, Inc., plaintiff, v. Oliver C. Tapp, defendant, is hereby declared null and void and of no effect whatsoever.
It is further ordered, adjudged and decreed that the judgment of the Lower Court herein is reversed, set aside and that there be judgment in favor of the plaintiff, Oliver C. Tapp, and against the defendants, Guaranty Finance Company, Inc. and Elmer A. Uffman, permanently enjoining them and each of them from seeking to enforce and execute such judgment in Suit No. 60,681 and that there be further judgment in favor of the plaintiff, Tapp, and against Guaranty Finance Company, Inc. and Elmer A. Uffman, severally and insolido, in the full sum of $100.00 with interest from judicial demand until paid and all costs of these proceedings.
Reversed and rendered.
NOTES
[1] The above ruling on a plea of prescription was re-affirmed by the Supreme Court in the same entitled case which was considered in 211 La. 701, 30 So.2d 761.