GLADNEY, Judge.
This is an action by the heirs of Mike Carlton against defendants, F. E. Webb, Julia Webb Thomas and Ealer Webb, to annul a judgment of the Twenty-Sixth Judicial District Court for the Parish of Bossier dated May 24, 1961. Holding that the judgment under attack was unconscionable and inequitable, the trial court declared it to be a nullity. The defendants, Webb, have appealed.
Mike Carlton died September 10, 1950, and was a longtime resident of Texas prior to his death. His widow and heirs Lave long been non-residents of this State. On November 26, 1936, Mike Carlton obtained from the defendants a Yath interest in and to the minerals on certain described land located in Bossier Parish. It was proven upon the trial that there had been production in commercial quantities of oil .and gas under the Carlton mineral deed continuously after 1940. Manifestly, therefore, the mineral servitude exercised under -the Carlton deed did not prescribe for mon-user.
In 1961 a suit was brought by the defendants in the instant action, alleging the mineral deed of November 26, 1936, had prescribed. Pursuant thereto a curator ad hoc was appointed to represent Mike Carlton. Although Carlton was dead, none of the members of his family were notified of the pendency of the suit. The first petition set forth as a cause of action that the mineral deed was a forgery. However, when proof of forgery was not forthcoming, the petition was amended to claim prescription as above related, which plea was sustained and resulted in the judgment of May 24, 1961.
Upon trial of the case certain uncon-troverted facts were revealed. These are set forth in the opinion of the trial court as follows:
“A. The person named defendant in the original action, Mike Carlton, died in the year 1950 in Gregg County, Texas and left surviving him petitioners in this action to annul.
“B. No notice of the pendency of this action was received by any of the heirs until at least two months after the rendition of judgment therein.
“C. That prior to the expiration of ten years of the granting of the servitude in question a well was drilled and production begun and continued by the Union Producing Company with offices in Shreveport, Louisiana, and has continued through the present date.
“D. That plaintiffs in the original action also own land in the same drilling unit and were receiving royalty thereunder during this period of time from the Union Producing Company.
“E. That the Union Producing Company of Shreveport, Louisiana was in possession of information *56 as to .the death of Mike Carlton and the names and addresses of his heirs which would have been readily available to the original plaintiffs upon request.”
Based upon these findings of fact the trial court concluded:
“The Court is of the opinion that it is not necessary to show fraud or ill practices in order to annul a judgment. The article providing that they may be annulled for those reasons does not intend to limit the court to these two grounds alone. The rule set forth in the Succession of Gilmore, 157 La. 130, 102 So. 94, that courts of this State should afford relief against judgments which were rendered under such circumstances that show the deprivation of the legal rights of the litigant who seeks relief when the enforcement of the judgment would be unconscionable and inequitable, should be controlling in the case at bar rather than the harsh rule laid down in Tell vs. Senac [122 La. 1040], 48 So. 448. For this court not to set aside the judgment previously rendered in this matter would without any doubt condone the taking of a valuable property right from the plaintiffs herein who are defendants in the original action and deprive them of any opportunity of presenting evidence which without much doubt would refute the allegations made by the original plaintiffs.”
The instant suit is brought under Article 2004 of the LSA-Code of Civil Procedure, the counterpart of Article 607 of the Code of Practice. Both articles declare that a final judgment obtained by fraud or ill practices will support an action of nullity. The Supreme Court, in considering whether the allegations of a petition form a sufficient basis for an action of nullity under C.P. Article 607 in the Succession of Gilmore, 157 La. 130, 102 So. 94 [1924], said:
“It is true that said petition does not charge ‘fraud’ or the ill practices specifically enumerated in the article of the Code of Practice above cited. The remedy given by said article to annul judgment, however, is not restrictive. The courts of this state will not hesitate to afford relief against judgments, irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of legal rights of the litigant who seeks relief, and when the enforcement of the judgment would be unconscientious and inequitable. Our courts will follow the general principles of equity jurisprudence applied by the equity courts of the other states of this country in actions of this character. Lazarus v. McGuirk, 42 La.Ann. [194] 200, 8 So. 253; City of New Orleans, v. LeBourgeois, 50 La.Ann. [591] 592, 23 So. 542.
“Courts of equity will not permit one party to take advantage of and enjoy the gains of ignorance or mistake of law by the other, which he knew of and did not correct, especially when a confidential or fiduciary relation existed between them. Pomeroy, Equity Juris. Vol. 2, pars. 847, 848, 849, 956.”
The official comment appearing under LSA-C.C.P. Art. 2004 declares that in omitting from Article 2004 certain illustrations which had appeared in C.P. Art. 607, there was no intention to change the law. Thus, it follows that the application of LSA-C.C.P. Art. 2004 should be the same as that which has been accorded C.P. Art. 607. In the case of Tapp v. Guaranty Finance Co., La.App., 158 So.2d 228 (1st Cir., 1963), a suit to annul a judgment for ill practices patent on the face of the record, it was said:
“It is evident from the text of the article that there is a distinction between fraud on the one hand and ill practices on the other. The article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all sitúa- *57 tions wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment, of some legal right, and where the enforcement of the judgment would be unconscientious and inequitable.”
Similar holdings are to be found in Lewis v. Bell, La.App., 137 So.2d 706 (3rd Cir., 1962); Gumina v. Dupas, La.App., 159 So.2d 377 (4th Cir., 1964).
Counsel for appellant has relied strongly on the case of Tell v. Senac, 122 La. 1040, 48 So. 448 (1909), which involved a deceased absentee in a partition suit. The circumstances there involved, we believe, distinguish the cited case from those mentioned above. However, we are inclined to think that the rule in Tell v. Senac is too harsh and inconsistent with the authorities above expressed. We think it would be unconscionable to deprive the nonresidents of their property rights in the instant case. The heirs of Carlton received no notice whatsoever until approximately two months following the rendition of the judgment of May 24, 1961. Under the facts as determined by the trial judge, the petitioners, Webb, knew, or should have known, of the existing production and that there could be no proof of non-user, and, secondly, that they knew, or should have known, that the location of Carlton or his heirs could easily have been obtained from the Union Producing Company.
Accordingly, it is our conclusion that the judgment appealed from is correct.
It is therefore ordered, adjudged and decreed that there be judgment in favor of plaintiffs, Lucille Press Carlton, Dolores Jean Carlton Thurman, Durold Dean Carlton and Billie Lee Carlton, and against the defendants, F. E. Webb, Julia Webb Thomas and Ealer Webb, annulling the judgment rendered and signed on May 24, 1961, in the case entitled F. E. Webb, et al. vs. Mike Carlton, No. 24,093 on the docket of the Twenty-Sixth Judicial District Court of Louisiana, in and for the Parish of Bossier, affecting the following described property, to-wit:
The West Half of the West Half (W of W Vi), Section 24, Township 17 North, Range 12 West; East Half of Northeast Quarter (E Vi of NE V4)> Section 23, Township 17 North, Range 12 West; East Half of Southwest Quarter of Northeast Quarter (E Vi of SW V4 of NE V4), Section 23, Township 17 North, Range 12 West; the Northeast Quarter of Southeast Quarter (NE }4 of SE 14), Section 23, Township 17 North, Range 12 West; the Northwest Quarter of the Northeast Quarter (NW V4 of NE V4), Section 23, Township 17 North, Range 12 West, Bossier Parish, Louisiana.
It is further ordered that appellants pay all costs of this appeal.
Affirmed.