Statement of the Case.
MONROE, C. J.
Plaintiff brought this suit in the parish of St. Tammany for the recovery of damages resulting from personal injuries alleged to have been sustained in an effort to get out of the way of á: horse, belonging to defendant, which, becoming unmanageable upon one of the streets of Abita Spring's, appeared likely to run over her. Alleging that she was' without means, she was allowed to sue in forma pauperis. De *257 fendant excepted to the jurisdiction of the court, ratione personas, alleging himself to he a citizen of New Orleans; and, his excep-. tion having been overruled, he has invoked the supervisory jurisdiction of this court for a review of that ruling. Apart from certain documents to which we shall refer, the only evidence offered upon the exception was the testimony of the defendant, himself, to the following effect, to wit;
He came to this country, from France, 45 years ago, established his residence and domicile in New Orleans, and has never been naturalized. Í-Ie is married and has two sons, aged 37 and 40 years, respectively; one of whom has a wife and three children. After living here for 30 years, he bought a furnished house in Abita Springs, a small town, known as a health resort, in the pine woods of St. Tammany parish, a few hours distant from this city, and, further, quoting from his testimony:
“I have a residence at Abita Springs. I go to New Orleans every day for my work, and I come here to sleep and for the health of my family. My residence and domicile are in New Orleans. * * * I bought that property because I was sick myself, and my wife was not well and we came here for that reason. I have my residence in New Orleans. Q. How long have you been coming to New Orleans? A. About 15 years. * * * Q. What is your business? A. Nothing at all. I am too old to work. Q. Why do you go to New Orleans daily? A. I have business in New Orleans. Q. When you have no business to do in New Orleans, where do you stay? * * * A. Well, then I stay here, but I go almost every day, there. * * * Q. You said that when you bought this house in Abita Springs, you bought it furnished? A. Yes, sir; it was all furnished. Q. What about your residence in New Orleans, did it remain furnished, and is it furnished? A. It is always furnished the same since I have been married. Q. Who occupies it? A. I live there myself when I go to the city, and my son. Q. Is your son a man of family? A. He has a wife and three children. Q. And he lives in that house? A. Yes, sir; he lives with me. * * * Q. When do you expect to go back'to New Orleans to live? A. But I live there now; I have never left the city of New Orleans; since 45 years I have always lived in the city of New Orleans; I have never gone anywhere else. Q. You keep your servants and live stock in Abita Springs, horses' etc.? A. I have my servants and my cow and my horses. Q. How often does Mrs. Dabezies go to New Orleans? A. She goes when it is useful — three, four, or five times a year, and she stays there one or two weeks and then returns.”
It is shown that, in 1907, 1910, and 1912, respectively, defendant bought real estate in New Orleans by notarial acts in which he declared that he and his wife resided in New Orleans. It is also shown that, in 1913, he, and others, signed and filed in court a sworn petition, making serious charges against the mayor of Abita Springs, in which they represent themselves as citizens and taxpayers of that town, and the respondent judge states in his return that, in two proceedings growing out of that thus mentioned, defendant offered no plea to the jurisdiction of the court, and was condemned for costs and damages.
Opinion.
[.1] The provisions of our law pertinent to the question at issue are to be found in the following articles of the Civil Code and Code of Practice, to wit (italics by the court);
“Art. 38 (C. 0.) The domicile of each citizen is in the parish wherein he has his principal establishment. The principal establishment is that in which he makes his habitual residence; if he resides alternately in several places, and nearly as much in one as in another, and has not declared _ his intention in the manner hereafter prescribed, any one of the said places where he resides may be considered as Ms principal establishment, at the option of the persons whose interests are thereby affected.”
“Art. 41. A change of domicile from one parish to another is produced by the act of residing in another parish, combined with the intention of making one’s principal establishment there.
“Art. 42. This intention is proved by an express declaration of it before the recorders of the parishes, from which and to which he shall intend to remove. This declaration is made in writing, is signed by the party making it, and [is] registered by the recorder.
“Art. 43. In case this declaration is not made, the proof of this intention shall depend upon circumstances.”
Turning to the Oode of Practice which deals more particularly with the “domicile,” *259 considered as the place where one is to he sued, we find the following:
“Art. 162. It is a general rule in civil matters that one must be sued before his own judge, that is to say, before the judge having jurisdiction over the place where he has his domicile or residence, and shall not be permitted to elect any other domicile or residence for the purpose of being sued, but this rule is subject to those exceptions expressly provided for by law.”
Various exceptions are then declared in articles 163, 164, and 165, among which is the following, in article 165:
“5. When the defendants are foreigners, or have no lenown place of residence in the state, they may be cited wherever they are found.”
And article 166 reads:
“If a defendant reside alternately in different parishes, he must be cited in that in which he appears to have his principal establishment or his habitual residence. If his residence in each appear to be nearly of the same nature, in such case he may be cited in either, at the choice of the plaintiff, unless he has declared, pursuant to the provisions of the law, in which of those parishes he intended to have his domicile.”
It will he seen from the foregoing that the lawmaker deals with the question of domicile from two points of view; the one, as it may affect the interest of the public or of the individual whose domicile is in dispute, and the other, as it may concern the interests of third persons. Thus, where the question involved is whether a person has lost, or .has acquired, the right to vote, or to hold office, in a particular state or parish, and in some other cases the courts have applied the doctrine (invoked by relator’s learned counsel) that:
“The domicile of origin continues until another be acquired, animo et facto. A change of domicile must be shown by express and positive evidence; so long as any reasonable doubt remains, the legal presumption is against such change.”
But where the question is whether a person who has residences and incurs debts and obligations in different communities, either of which might be considered his domicile, has the right to determine in which he shall be sued, or whether that option is left to those who have claims against him, the answer is given in the explicit language of both the Civil Code and Code of Practice, to the effect, in the one, that, “If he resides alternately in several places, and nearly as much in one as in another, and has not declared his intention, * * * any one of said places may be considered his principal establishment [at which he may be sued], at the option of the persons whose interests are thereby affected,” and, in the other, that, “If his residence in each appears to be nearly of the same nature, in such case, he may be cited in either, at the choice of the plaintiff, unless he has declared,” etc.
[2]' It will be observed that the Civil Code provides that:
“The domicile of each citizen is in the parish wherein he has his principal establishment.”
And that, “the principal establishment is that where he makes his habitual residence,” and that the Code of Practice provides that “if a defendant reside alternately in different parishes, he must be cited in that in which he appears to have his principal establishment or his habitual residence [subject to the condition that, if the residences appear to be nearly of the same nature, he may be cited in éither] at the choice of the plaintiff,” etc.
And this court has held that:
“The law which fixes the domicile of each citizen at the place where his principal establishment is situated means the principal domestic establishment.” That “it is there he sleeps, takes his meals, has established his. household, and surrounded himself with his family and the comforts of domestic life.” Hyman, Lichtenstein & Co. v. Schlenker & Hirsch, 44 La. Ann. 117, 10 South. 623, 626 (quoting with approval from Succession of Franklin, 7 La. Ann. 400, and Hill v. Spangenberg, 4 La. Ann. 554).
In the instant case, the defendant admits that he and his wife live in their own house,, with their own servants, cow, and horses, at *261 Abita Springs, and, as their only children are two sons, aged 37 ánd 40 years, respectively, and he admits that one of the sons with his wife and three children live in his former residence in New Orleans, and says nothing of the other son, we infer that' he and his wife constitute the entire family occupying the Abita Springs residence. It is true that, giving his testimony in St. Tammany parish he says, “I go to New Orleans every day for my work,” but, being asked, “What is your business?” he replies, “Nothing at all; I am too old to work.” And, being then asked, “Why do you go to New Orleans daily?” his answer is, “I have business in New Orleans.” His further testimony, to the effect that he still resides in his former home in New Orleans, and that his son, 37 or 40 years old, with the wife and three children, live there with him, taken in connection with the fact that he sleeps at Abita Springs, leaves there after breakfast, as we infer, and gets back to his evening meal also seems to require explanation, and, without it, surrounds his real relation to the New Orleans establishment with as much of a fog as that which envelops his frequent trips between his two alleged places of residence. . One would suppose that the 40 year old son of a thrifty father would be able to do something towards the support of his own wife and children, and that the father, being “too old to work,” according to his testimony, and having sufficient means to authorize the investment of several thousands of dollars in real estate within the past few years according to the record, might find some more agreeable way of spending his time than traveling daily between New Orleans and Abita Springs. However that may be, and, conceding (though, there is no intimation in the evidence that he has any intention of ever coming any nearer to actually living in New Orleans than he does now) that defendant still thinks that he lives here, the fact remains that his principal domestic establishment is at Abita Springs; and, even if that were not the case, that the situation is such as to entitle the “plaintiff,” and not the defendant, to the privilege of determining at which of-the two places this suit should be brought.
Our conclusion, then, is that the exception to jurisdiction was properly overruled.
It is therefore ordered that the restraining order herein made be rescinded, the rule nisi, recalled, and this proceeding dismissed at the cost of the relator.