42 So.2d 860

**WALSH v. WALSH.**

No. 39022.

June 30, 1949.

Rehearing Denied Nov. 7, 1949.

---

Wilson, Abramson & Maroun, Shreveport, for appellant.

Lee & Emery, Shreveport, for appellee.

McCALEB, Justice.

On February 28, 1944, Bernard A. Walsh filed suit against his wife, Mrs. Effie E. Walsh, in the Twenty Sixth Judicial District Court for the Parish of Bossier, praying for an absolute divorce on the ground that he and his wife had been living separate and apart for more than two years. Upon his allegation that his wife was and had been a resident of Washington, D. C., the court, in conformity with law, appointed a curator ad hoc to represent her in the divorce proceedings. After citation, through the curator, and the expiration of legal delay, a judgment for divorce was rendered by default and confirmed on March 27, 1944.

Subsequently, Walsh contracted a second marriage with one Roovie House, with whom he lived until his death on September 22, 1944, at Dallas, Texas as the result of an automobile accident. Shortly after his demise, Mrs. Effie E. Walsh filed a petition in the divorce proceedings, seeking a nullity of the judgment on the ground that the Court was without jurisdiction ratione materiae and, alternatively, because it was allegedly obtained through fraud and misrepresentation of the plaintiff.

The substance of the allegations of the petition for annulment is that plaintiff recently learned that her husband had obtained a final judgment of divorce against her by default; that he had falsely alleged in the divorce proceedings that he moved to Bossier Parish in 1932, with the intention of making his home there and that he had continuously resided there since that date, whereas, in truth, he was never domiciled in Bossier Parish but was merely temporarily stationed there on several occasions, when assigned to military duty at Barksdale Field. In the alternative, it was

averred that, if it be found·otherwise, the judgment of divorce should nevertheless be annulled because Walsh had untruthfully represented to the court that he and the plaintiff had separated on December 29, 1931 and that they had been living separate and apart since that time when, as a matter of fact, they had never lived separate and apart within the meaning of the law.

Alleging Walsh's death and that he was survived by several brothers and sisters, who were all non-residents of this State, plaintiff prayed for and obtained the appointment of a curator ad hoc to represent them as parties defendant to the action. She also set forth that Walsh's succession had been opened in proceedings in the First Judicial District Court for the Parish of Caddo; that Mrs. Roovie House Walsh, who was pretending to be his widow and was applying for appointment as administratrix of his succession, was a necessary party and that, accordingly, she be cited as a defendant.

In due course, Mrs. Roovie House Walsh (the second wife) appeared and filed exceptions of no cause or right of action, estoppel and res adjudicata. The other defendants did not personally appear and the matter has deviated into a contest between the decedent's first and second wives. The exceptions of the second wife were overruled [1] and she answered, denying the material averments of the petition, praying that plaintiff's demands be rejected.

On the issues thus formed, a hearing was had and the trial court, being of the opinion that the contentions of plaintiff were well founded, entered judgment in her favor vacating and setting aside the judgment of divorce. All of the defendants have appealed from the adverse decision.

The record reveals the following facts, which are not seriously disputed. Bernard Walsh was a professional soldier. His initial enlistment in the Army was in 1917 at his home in Oakland, California. He was assigned to the Quartermaster Corps and served in France during 1918. Thereafter, his record shows a multitude of assignments of duty at various forts, camps and airfields located in and out of the United States over a period of approximately twenty-seven years. On December 19, 1927, while stationed at Bolling Field, Washington, D. C., he married plaintiff at Annapolis, Maryland. Plaintiff was then and thereafter employed and residing in Washington and, for a short period following the marriage, she and Walsh lived together in an apartment in that city. In January 1932, Walsh was transferred to March Field, California on duty with pursuit and bombardment squadrons and subsequently, in October 1932, he was assigned to Barksdale Field. From the time he left Washington, in 1932, Walsh did not live

---

1. We find it unnecessary to discuss the exceptions in view of the conclusion we reach on the merits.

with plaintiff as she remained at her job in Washington throughout the years while he was being shifted from one army post to another. However, the parties visited each other for short intervals on a few occasions (plaintiff says that they cohabited on these visits) and throughout the years (up to 1944) they corresponded.

The trial judge correctly sums up their relationship thus: "Apparently after 1932 these people did not actually live together, and saw each other in 1936, 1940, and 1941, when she visited in Louisiana and in 1937 when he was on his way to Hawaii he visited her in Washington. He seems to have written her a number of letters all along, and she says she planned to come down in 1943, but her husband could not find a place to live. She did not see him after 1941."

From 1932 until his death, Walsh was on duty at Barksdale Field during the following periods: October 14, 1932 to May 21, 1933; May 21, 1934 to July 26, 1937 and September 28, 1939 to November 1, 1941. In his verified petition for a divorce, Walsh alleged that he moved to Bossier Parish on November 1, 1932 with the intention of making it his home and "has continuously resided in said parish since said date with the exception of such times as he has been transferred from place to place on account of his occupation and especially shows that he has continuously lived in Bossier Parish Louisiana for more than two years * * *".

The attack upon the jurisdiction of the court is premised on the contention that Walsh was never a bona fide resident of Louisiana; that his sojourns in this State were temporary, while assigned to duties at Barksdale Field, and that his residence had never been changed from his home in Oakland, California since 1917, when he enlisted in the armed forces. And, relying on the well-established rule that persons in the military service do not surrender their residence or domicile by being transferred to other places, see Zinko v. Zinko, 204 La. 478, 15 So.2d 859; Spring v. Spring, 210 La. 576, 27 So.2d 358 and Walcup v. Honish, 210 La. 843, 28 So.2d 452, and certain evidence to which we will hereafter advert, counsel for plaintiff maintain that lack of jurisdiction has been shown beyond any doubt.

The trial judge sustained this contention but we think he erred in his decision. While it is settled that a person in the military service is presumed to retain his residence in the State from which he was inducted, the presumption is subject to rebuttal and obtains only in cases where the proof fails to show that he established a new residence elsewhere. Moreover, there is another circumstance to be considered in the case at bar, that is, that the matter of Walsh's residence in Louisiana had already been determined by the judgment in the divorce proceedings, wherein it is recited that due proof had been made of the allegations of the petition. That judgment, even though it was taken by default,

is presumptively correct and plaintiff, who is now seeking to have it vacated, carries the burden of proving a lack of jurisdiction of the Court which does not appear on the face of the record as the proceedings are regular and formal in all respects. Succession of St. Ange, 161 La. 1085, 109 So. 909 and Gennusa v. Gennusa, 189 La. 137, 179 So. 60.[2]

▪ An examination of the evidence and circumstances touching on the question of domicile has satisfied us that plaintiff has failed to establish that Walsh did not effect a change of his domicile to Bossier Parish. The proof submitted by her consists of her own testimony that Walsh told her several times during their marriage that some day they would settle down in Oakland, California and the fact that he stated, in an application to the government for life insurance made on August 3, 1943, that his home address was Oakland, California.

On the other hand, defendants tendered the testimony of relatives and friends of Walsh that he had stated on numerous occasions that Barksdale Field was his home. In addition to this, it was disclosed that, despite the fact that Walsh did not remain in any location for a great length of time due to various transfers from one military camp to another, he kept all of his property (war bonds, insurance policies, etc.) in a safety deposit box in the Bossier

Bank & Trust Company and that, prior to 1937 and continuously thereafter to his death, he maintained his checking account in that bank. In this connection, the testimony of Mrs. Louise Baumgardner, Assistant Cashier of Bossier Bank & Trust Company (a wholly disinterested witness) is particularly impressive. After stating that she had been acquainted with Lieutenant Walsh for a number of years and that she performed banking services for him, she declared that he had told her on numerous occasions, when he would return from other assignments of duty, that he considered Barksdale Field as his home.

▪ Residence, as used in Act 430 of 1938, is synonymous with domicile and envisions the principal domestic establishment of the individual. Article 38 of the Civil Code; Mosely v. Dabezies, 142 La. 256, 76 So. 705 and Zinko v. Zinko, supra.

▪ In Spratt v. Spratt, 210 La. 370, 27 So.2d 154, we said: "Residence essential to jurisdiction in a divorce proceeding instituted under the provisions of Act No. 430 of 1938 means actual residence coupled with the intention to make the place of residence a permanent place of abode. Lepenser v. Griffin, 146 La. 584, 83 So. 839."

A consideration of all the evidence, in conjunction with the particular circumstances of the case, makes it manifest to us that Walsh considered Barksdale Field

2. Compare Zinko v. Zinko, 204 La. 478, 15 So.2d 859; Spring v. Spring, 210 La. 576, 27 So.2d 358 and other cases not involving annulment where it is correctly held that the burden is upon plaintiff to establish jurisdiction ratione materiae.

as his home and that his legal residence was Bossier Parish. It must be borne in mind that the facts here are quite different from cases like the Spring and Zinko and other matters where the court was dealing with armed force inductees of recent origin who were attempting to have the court say that they had acquired a domicile merely because they had been stationed in this State for two years or more. But, here, Walsh, a career soldier, had spent twenty-seven years of his life moving from one place to another. During this span he was at Barksdale Field longer than any other place, remaining there for over two years on one occasion (1939–1941) and three years (1934–1937) on another. To say the least, it would require a strained interpretation of the evidence to conclude that, in spite of the fact that he kept all his property in Bossier Parish and transacted his business there, he still considered Oakland, California (which he had left in 1917) as his home.

■■ Since we are of the opinion that plaintiff's attack on the jurisdiction of the court must fail, we pass on to a consideration of her alternative contention that the divorce was obtained as a consequence of fraud and ill-practice. The main charge on this score is that the allegation of Walsh in his petition "That he and his said wife separated on December 29, 1931 and that he and his said wife have been living separate and apart since said time" is false and untrue for the reason that he and the plaintiff frequently cohabited after that date.

We find much difficulty in perceiving that the allegation relied upon by plaintiff's counsel was a false and fraudulent averment nor do we consider that the testimony which evidently was tendered in support thereof constituted ill-practice or misrepresentation authorizing an annulment of the judgment. The facts of the case, as found by the trial judge, show that Walsh and the plaintiff separated in 1932, and except for sporadic occasions in 1936, 1937, 1940 and 1941 (when plaintiff says cohabitation took place) they did not actually live together or even see each other. There is nothing to show that Walsh misrepresented these facts to the court in the proof submitted by him in support of his petition for divorce.

The argument of counsel for plaintiff is based on the predicate that, since Walsh corresponded with plaintiff during the entire period of separation and did not at any time, until shortly after filing the suit, indicate a desire to abandon the marriage, the allegation that he lived separate and apart from her since 1931 was false because, under the jurisprudence, see Otis v. Bahan, 209 La. 1082, 26 So.2d 146, 166 A.L.R. 494, it is necessary, to obtain a divorce under Act 430 of 1938, to show that the living separate and apart of the husband and wife is a voluntary act on the part of either one or both of the

spouses with a view of discontinuing the marital relationship. In other words, counsel say that, since the evidence shows that the continued separation of Walsh and plaintiff was occasioned by his profession and her employment in Washington, the judgment of divorce was fraudulently obtained because Act 430 of 1938, when properly construed, does not authorize the granting of a divorce under such circumstances.

In this postulate, counsel fail to take into account the difference between a judgment which may be erroneous as a matter of law, because of an insufficiency of evidence or otherwise, and one procured by fraud, ill-practice or misrepresentation. It is only in the latter case that the action of nullity is permissible under Article 607 of the Code of Practice—for it is firmly established that the remedy cannot be employed as a substitute for an appeal. State v. Sommerville, 112 La. 1091, 36 So. 864; Emuy v. Farr, 125 La. 825, 51 So. 1003; Miller v. Miller, 156 La. 46, 100 So. 45 and Vinson v. Picolo, La.App., 15 So.2d 778.

 It is true that our courts have given Article 607[3] of the Code of Practice a very broad interpretation so as to afford relief "when the enforcement of the judgment would be unconscientious and inequitable." See Succession of Gilmore, 157 La. 130, 102 So. 94, 95. But this does not mean that the action of nullity performs the office of an appeal or that it can be used to set aside a final judgment where there is no showing of mischief or imposition, merely because the judgment was rendered by default. And this is particularly true in a case such as this, where the status of another would be seriously impaired if the judgment of divorce was to be set aside—for, here, in dealing with the equities, we are bound to give consideration to the second marriage which was contracted on the faith of the judgment under attack[4] and also scrutinize the motives which prompted plaintiff to seek the annulment of the judgment after her former husband's death.

The judgment appealed from is reversed and the suit is dismissed at the cost of Mrs. Effie Emerson Walsh.

O'NIELL, C. J., takes no part.

3. This Article reads: "A definitive judgment may be annulled in all cases where it appears that it has been obtained through fraud, or other ill practices on the part of the party in whose favor it was rendered; as if he had obtained the same by bribing the judge or the witnesses, or by producing forged documents, or by denying having received the payment of a sum, the receipt of which the defendant had lost or could not find at the time, but has found since the rendering of the judgment."

4. See 27 C.J.S., under the title Divorce, § 171, and authorities there cited.