284 So.2d 149 (1973)
James Ray JOHNSTON, Plaintiff-Appellant,
v.
Glen H. SMITH, Defendant-Appellee.
No. 12129.
Court of Appeal of Louisiana, Second Circuit.
September 11, 1973.
Rehearing Denied October 10, 1973.
*150 Naff, Kennedy, Goodman, Donovan & Parnell, by Robert J. Donovan, Jr., Shreveport, for plaintiff-appellant.
Goode & Goode, by William L. Goode, Shreveport, for defendant-appellee.
Before AYRES, BOLIN, and HALL, JJ.
En Banc Rehearing Denied October 10, 1973.
AYRES, Judge.
This is an action of nullity wherein plaintiff, a former client of the defendant, an attorney at law, seeks to have decreed null and void a judgment entered against him by default in favor of the defendant for the sum of $3,481.98, which amount represents an attorney's fee of $3,220.00 and costs of court and of transcript of record of $361.98 less $100.00 paid prior to the institution of that action. The fee and costs were claimed to have been incurred by plaintiff by virtue of his representation by defendant in an action between plaintiff and his wife for a separation.
To plaintiff's petition defendant filed and successfully urged in the trial court exceptions of no cause and of no right of action. From a judgment accordingly dismissing plaintiff's action he prosecutes this appeal.
The exceptions are based primarily upon the propositions that (1) plaintiff has not alleged the judgment was procured by fraud or ill practices and (2) plaintiff's remedy, if any, was by an appeal from the judgment of which he now complains.
No basis is alleged or shown for the application of the exception of no right of action. It is clearly without merit.
The issue presented for resolution on this appeal relates to the sufficiency of plaintiff's allegations in the instant case to state or disclose a cause of action. In giving consideration to the merits of an exception of this character, it is quite clear that all well-pleaded facts set forth in the petition must be accepted and considered as true and correct; that a petition must be considered in its entirety; and that a petition stating a cause of action on any ground or as to any portion of the demand will not be dismissed on an exception of no cause of action. Hall v. Hall, 127 So.2d 347 (La.App.2d Cir. 1961).
"A final judgment obtained by fraud or ill practices," so declares LSA-C.C.P. Art. 2004, "may be annulled." The source of this article is the provisions of Code of Practice Art. 607, the pertinent language of which was:
"A definitive judgment may be annulled in all cases where it appears that it has been obtained through fraud, or other ill practices on the part of the party in whose favor it was rendered; . . ."
The language of this article continues by citing nonexclusive examples of fraud or ill practices.
In commenting upon the sufficiency of the allegations of a petition drawn pursuant to the aforesaid codal provisions, the Supreme Court, in Succession of Gilmore, 157 La. 130, 102 So. 94, 95 (1924), made the following comment:
"It is true that said petition does not charge `fraud' or the ill practices specifically enumerated in the article of the Code of Practice above cited. The remedy given by said article to annul judgments, however, is not restrictive. The courts of this state will not hesitate to afford relief against judgments, irrespective of any issue of inattention or neglect, when the circumstances under which the judgment is rendered show the deprivation of legal rights of the litigant who seeks relief, and when the enforcement *151 of the judgment would be unconscientious and inequitable. Our courts will follow the general principles of equity jurisprudence applied by the equity courts of the other states of this country in actions of this character. Lazarus v. McGuirk, 42 La.Ann. 194, 200, 8 So. 253; City of New Orleans v. Le Bourgeois, 50 La.Ann. 591, 592, 23 So. 542.

"Courts of equity will not permit one party to take advantage of and enjoy the gains of ignorance or mistake of law by the other, which he knew of and did not correct, especially when a confidential or fiduciary relation existed between them. Pomeroy, Equity Juris, vol. 2, pars. 847, 848, 849, 956.
"The exception of no cause of action is not well founded." (Emphasis supplied.)
See, also: Alonso v. Bowers, 222 La. 1093, 64 So.2d 443 (1953); Vinson v. Picolo, 15 So.2d 778 (La.App., Orl.1943); Hall v. Hall, supra; Tapp v. Guaranty Finance Company, 158 So.2d 228, 232 (La.App., 1st Cir. 1963writ refused); Southern Discount Company v. Williams, 226 So.2d 60, 62 (La.App., 4th Cir. 1969).
The aforesaid legal principles are applicable to the facts alleged in the instant case. Based upon these allegations which, as already noted, we must, for the purpose now concerned, accept as true, it is made to appear plaintiff retained defendant as his attorney to represent him in a proceeding for a separation between plaintiff and his wife; at the time of his employment defendant advised plaintiff that his attorney's fees would be approximately $400.00 to $500.00; that thereafter plaintiff and his wife became reconciled and resumed their marital relationship. The separation proceedings were thus terminated after trial of the case on its merits but before briefs were filed with the court or the cause was submitted for decision. Thereafter, in a conversation between plaintiff and defendant, the latter stated he would accept $1,000.00 in full payment of his fees, costs, and expenses. Subsequent thereto, defendant stated again, by letter, that he would accept this sum. However, enclosed with the letter was a statement of the account which defendant claimed plaintiff owed. Listed were an attorney's fee of $2,400.00, court costs of $125.00, and cost of transcript, $50.00. After crediting plaintiff with the payment of $100.00, the statement reflected a balance claimed to be due on the account of $2,475.00. In the filing of this suit, defendant increased the amount of his attorney's fees to $3,220.00 and the amount of costs, including cost of transcript, to $361.98 less $100.00 paid. Upon confirmation of a default, plaintiff was accordingly condemned therein for the principal sum of $3,481.98, plus interest and costs.
Defendant was alleged in plaintiff's petition to have made only three appearances in court with reference to the matter for which he was employedonce with regard to an injunction, a second time with reference to a claim for support, and lastly for the trial of the case on its merits.
In confirming the default and obtaining judgment, defendant is alleged not to have advised the court of the estimation made by him to plaintiffthat his fee would be approximately $400.00 to $500.00, or that he subsequently agreed to accept $1,000.00 in full payment, or that he first billed plaintiff for a fee of $2,400.00. In view of these facts, plaintiff's position is that the attorney's fee is excessive and exorbitant and that the judgment condemning him to pay it is inequitable and unconscionable.
In this connection, it is alleged that defendant had engaged in the practice of law for only about a year; that the performance of his duties under his employment as plaintiff's attorney required no special or extraordinary skill or training not common to all young lawyers; and that in the fixing of his fee none of the usual criteria or standards were given consideration.
*152 In Tapp v. Guaranty Finance Company, supra, the court observed, with respect to the provisions of LSA-C.C.P. Art. 2004:
"It is evident from the text of the article that there is a distinction between fraud on the one hand and ill practices on the other. The article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment, of some legal right, and where the enforcement of the judgment would be unconscientious and inequitable." (Emphasis supplied.)
158 So.2d 228, 233.
As was appropriately observed in Burthe v. Lee, 152 So. 100, 102 (La.App., Orl. 1934):
"Lawsuits are not games in which courts are the mere referees or umpires, and in which technicalities must be allowed to triumph over actual justice."
In Alonso v. Bowers, supra, the Supreme Court held that plaintiff's ill practice in failing to serve a supplemental and amended petition on defendant's attorney of record, as required by statute LSA-R.S. 13:3344 et seq., although domiciliary service was made upon the defendant, enabled plaintiff to secure a default judgment so as to authorize an annulment thereof. The court made this comment:
". . . According to Article 607 [of the Code of Practice, the source of LSA-C.C.P. Art. 2004], one of the cases in which such judgment may be annulled is where it appears that it was obtained by ill practices on the part of the party in whose favor it was rendered. Under the jurisprudence any improper practice or procedure which enables a party to obtain a definitive judgment comes within the meaning of this article. The courts have looked at each case from a purely equitable viewpoint to ascertain whether allowing the judgment to stand would be inequitable or unconscionable in view of the practice or procedure which enabled the party to obtain such judgment." (Emphasis supplied.)
64 So.2d 443, 444.
See, also: Lacoste v. Robert, 11 La.Ann. 33 (1856); City of New Orleans v. Le Bourgeois, 50 La.Ann. 591, 23 So. 542 (1898); Tarver v. Quinn, 149 La. 368, 89 So. 216 (1921); Succession of Gilmore, supra; Walsh v. Walsh, 215 La. 1099, 42 So. 2d 860 (1949); Coltraro v. Chotin, 1 La. App. 628 (Orl., 1925).
In Southern Discount Company v. Williams, supra, which was a suit on a note secured by a chattel mortgage, wherein plaintiff confirmed a default and obtained judgment notwithstanding plaintiff had agreed to allow defendant reasonable time within which to file an answer, but nevertheless proceeded to take judgment without further notice to defendant and without advising the trial court of the reasonable-time extension agreement, it was held that plaintiff, in so doing, imposed upon the trial court in that it did not inform the court of the agreement for a reasonable extension of time for defendant to file an answer. (226 So.2d 60, 61-62.)
The allegations of defendant's radical departure from the estimation of his fee made to plaintiff at the inception of his employment, his subsequent offer to accept double the amount of his estimation, his first invoice of his fee at $2,400.00, his statement of his fee at $3,220.00 attached to his petition, and finally his failure to disclose these matters to the court in the confirmation of the default do not evidence the kind of relationship which should exist between an attorney and his client, nor that relationship which should exist between an attorney and the court of which the attorney is an officer. Charges of this character are charges of imposition not only upon the court but upon the defendant.
*153 Gauging the alleged facts of this cause by the aforesaid principles of law, the conclusion is inescapable that plaintiff has adequately and sufficiently alleged a state of facts which, if established on trial, would warrant a conclusion that the judgment, the validity of which is the subject matter of this action, was inequitable and unconscionable. Therefore, plaintiff's petition, in our opinion, states and discloses a cause of action.
Defendant contends, however, that plaintiff's remedy was by an appeal and not by an action of nullity. The action of nullity as provided in LSA-C.C.P. Art. 2004 is independent of the remedy by appeal; and while it is not a substitute for an appeal, its purpose is to furnish relief against fraud or ill practices which have operated in the obtention of a judgment which makes no appearance in the record and for which an appeal would afford no relief. State v. Sommerville, 112 La. 1091, 36 So. 864 (1904); Miller v. Miller, 156 La. 46, 100 So. 45, 46 (1924); Vinson v. Picolo, supra; Walsh v. Walsh, supra; Cryer v. Cryer, 70 So.2d 752 (La.App., 1st Cir. 1954); Hall v. Hall, supra.
Moreover, this court held in Sturgis v. Gulfco Finance Company of West Monroe, 147 So.2d 782, 786 (La.App., 1962), that one seeking to annul a default judgment for fraud is not required to show that he was prevented from asserting the defense relied upon at the trial by some intentional fraud or ill practice on the part of the party in whose favor the judgment was rendered.
An appeal in the former cause would not have afforded defendant therein, plaintiff in the instant cause, any practical relief. The facts on which he relies for an annulment of the judgment do not appear in that record. Article 607 of the Code of Practice and Article 2004 of the Code of Civil Procedure, which appertain to annulment of judgments for fraud or other ill practices, are of very broad scope. The former was construed in the Succession of Gilmore, supra, and other authorities cited hereinabove to authorize the avoidance of any judgment where it appeared that its enforcement would be unconscionable and inequitable irrespective of any issue of inattention or neglect. Accardo v. Dimiceli, 226 La. 435, 76 So.2d 521, 522 (1954).
For the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; the exceptions of no cause and of no right of action are overruled; and
Accordingly, this cause is remanded to the Honorable Eleventh Judicial District Court in and for DeSoto Parish, Louisiana, for further proceedings in accordance with law and consistent with the views herein expressed.
Defendant-appellee is assessed with the costs of this appeal. The assessment of all other costs are to await final judgment.
Reversed and remanded.