DOMENGEAUX, Judge,
dissenting.
Lionel Joseph Peschier’s first wife, Leota, filed this suit to annul her husband’s divorce judgment against her approximately *1244 I6V2 years after the rendition of that judgment, 16 years and 4 months after Lionel married his second wife, Marjorie, the defendant-executrix in this case, and approximately 5 months after Lionel died.
My review of the record reveals myriad incidences of contradictory testimony and evidences of strained feelings and enmities among blood and in-law relatives of the decedent, Lionel Peschier. The record further discloses testimony from seemingly disinterested witnesses suggesting to me that the able trial judge erred in some of his factual conclusions. It is difficult for me to conclude that Lionel Peschier could not have been a domiciliary of Evangeline Parish at the time he filed suit for divorce against his first wife, Leota. Although it may be reasonable to conclude that Leota was . a resident of Rapides Parish at the time of the suit, nevertheless there is substantial evidence that she could have been considered an absentee at that time. It is difficult for me to determine the basis upon which the trial judge concluded that Lionel Peschier deliberately misled his counsel and deliberately practiced a fraud upon the court in seeking a divorce in Evangeline Parish. I fail to see any motive which he may have had for so doing. There was no need for him to resort to fraud in order to seek a divorce in Evangeline Parish. He had previously been legally separated from Leota on October 14,1955, and immediately thereafter entered into a community property settlement with Leota. Approximately two years later Leota signed a supplemental community property agreement which recited that the parties were still living separate and apart from each other. The divorce, which Lionel received from Leota on November 28, 1960, was based on grounds that the spouses had been living separate and apart for more than two years.
Recognizing that the plaintiff in this nullity action should be required to establish her case by exceptionally strong and convincing proof (Patton v. Patton, 229 La. 335, 86 So.2d 57 (1956)), I feel that she has failed in that regard.
Courts should proceed with exceptional caution and deliberation when confronted with actions for annulment of judgments of long duration, especially, as here, where the status of another (second wife) would be seriously impaired if the judgment of divorce was to be set aside. For here, in dealing with the equities, we are bound to give consideration to the second marriage, which was contracted on the faith of the judgment under attack, and scrutinize the motives which prompted plaintiff (first wife) to seek the annulment of the judgment so many years later, and after the death of her former husband. Walsh v. Walsh, 215 La. 1099, 42 So.2d 860 (1949).[1]
Notwithstanding the above observations, which surely indicate my feelings of disagreement with the judgment of the able district judge, I nevertheless would not find it necessary to vote for a reversal of the judgment on the grounds reached by the district judge. Instead, I would reverse the district court judgment for the following reasons.
Pure and simply, the record indicates to me that the plaintiff in this annulment suit is barred by prescription from bringing this nullity action.
La.C.C.P. Art. 2004 reads as follows:
“A final judgment obtained by fraud or ill practices^ may be annulled.
An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.”
A review of the testimony of Candy Pes-chier, daughter of Lionel and Leota Peschier and an obvious hostile witness who testified in favor of the plaintiff, Leota, leads to the conclusion that Candy knew of the divorce action in question in December of 1975 or January of 1976. Her unequivocal testimony was that she learned of the di *1245 vorce from “the attorneys.” In naming the law firm she stated — “the lawyer told us. I mean, my mother’s lawyer. ” It is inconceivable, considering the closeness between Candy and her mother Leota in these proceedings, that her mother would not have known of the divorce action when the source of the information was Leota’s own lawyers.
There is also evidence leading to conclusions that Leota acquiesced in the divorce judgment under C.C.P. Art. 2003.[2] There is testimony, some of which came from Leo-ta’s own witnesses, to the effect that Leota knew of Lionel and Marjorie’s marriage, and in fact visited with them on several occasions at their residence located at 718 Glover Street, Lake Charles, Louisiana.
Additionally, there is documentary evidence in the record which clearly establishes that Lionel and Marjorie were married, and it is evident that the plaintiff Leota knew of these documents inasmuch as many of them were discovered through the efforts of her daughter Candy around January, 1976. In fact, Candy began these discovery efforts on behalf of her mother, Leota.
I conclude that a preponderance of the evidence indicates that Leota Peschier knew for a number of years that Lionel Joseph Peschier was married to and living with Marjorie Morris Peschier in Lake Charles, Louisiana, and had knowledge of these facts at least more than a year prior to her suit for nullity.
Considering all aspects of this case, particularly the exceptionally strong and convincing proof that is required in these type cases, coupled with the aequiscence and knowledge which I think existed in the plaintiff Leota Peschier, I would reverse the judgment of the district court and dismiss plaintiff’s suit at her costs.

. There are many similarities in the case at hand and the Walsh case. Of particular significance is the fact that in Walsh, the Louisiana Supreme Court reversed factual findings of the trial court in order to declare the divorce decree in that case legal and proper.

. La.C.C.P. Art. 2003 reads as follows:
“A defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment on any of the grounds enumerated in Article 2002.”