443 So.2d 702 (1983)
Patricia J. Bush, Wife of/and Joseph F. BUSH
v.
Grace A. Lee, Wife of/and Robert E. LEE.
No. 83-CA-450.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1983.
Rehearing Denied January 17, 1984.
Writ Denied March 9, 1984.
*703 John M. Duck, Adams & Reese, New Orleans, for plaintiffs-appellees.
Robert E. Lee, New Orleans, for defendants-appellants.
Before KLIEBERT, CURRAULT and DUFRESNE, JJ.
CURRAULT, Judge.
Defendants Grace A. Lee, wife of/and Robert E. Lee, attorney at law, appeal an adverse judgment rendered in an action brought by them to nullify a prior judgment. The prior judgment sought to be annulled was rendered against defendants pursuant to a petition for possession of property and eviction filed by plaintiffs Patricia J. Bush, wife of/and Joseph F. Bush who purchased the property at a Federal tax sale.
Because of the variety of motions and pleadings filed in the case which ultimately may have created some confusion in the rendition of the judgment sought to be annulled, a chronological history of the events is merited.
The record reveals that the Bushes, plaintiffs, purchased the property owned by the defendants, Lees, from the Internal Revenue Service, which property had been seized for defendants' non-payment of delinquent Federal income taxes. Following the one hundred twenty (120) day right-of-redemption pursuant to 26 U.S.C. § 6337, the Internal Revenue Service issued a quit-claim deed to plaintiffs on March 12, 1981.
On April 16, 1981, plaintiffs filed a petition for possession of premises against defendants pursuant to LSA-C.C.P. arts. 4701 et seq.
On May 11, 1981, defendants filed a motion to consolidate this action with a defamation suit brought by them against plaintiffs, as well as an exception of no cause of action, an exception of unauthorized use of summary procedure, and an exception of no right of action. The motion and exceptions were set for hearing on June 5, 1981.
Following a bench conference with the court, on May 15, 1981, the parties agreed to submit the matter on written stipulations as appears from the minute entry dated that same day. Plaintiffs then moved to admit the certificate of sale of seized property and deed into evidence, and by order of May 19, 1981, the trial judge admitted the documents into evidence.
On May 20, plaintiffs filed a memorandum in opposition to the motion to consolidate and on the same date filed a memorandum in opposition to the peremptory and dilatory exceptions of no cause of action and no right of action, previously asserted by the defendants. On the same date, defendants filed an exception of lis pendens, a motion for bond for costs, a motion for continuance, and the amendment to an exception of unauthorized use of summary proceedings.
Subsequently, by an ex parte order of May 28, the trial court continued the hearings previously set on the various motions from June 5 to September 4, 1981.
*704 On June 2, plaintiffs filed an opposition to the motion for continuance and requested the court to reconsider a continuance of the hearings. However, minute entries of June 5, 1981 and June 12, 1981 reflect that the matter was submitted by stipulation of the parties; and on July 6, the trial judge entered a judgment for plaintiffs. Pursuant to the judgment, a writ of possession was issued commanding the defendants to surrender the premises to plaintiffs. In the written reasons for judgment, the court disregarded the numerous exceptions and dilatory pleadings filed by the defendants, finding them to be without merit and to have been filed only for the purpose of delay. On July 7, defendants filed a motion for a suspensive appeal and the court ordered defendants to file a bond in the amount of Two Hundred Fifty and No/100 Dollars ($250.00).
Plaintiffs then filed an ex parte motion to rescind the order granting the suspensive appeal for failure of the defendants to file the appeal bond within the 24-hour period as required by LSA-C.C.P. art. 4735 and due to the defendants' failure to file verified pleadings setting forth affirmative defenses.
On July 9, the motion was granted, rescinding the July 7 order for the suspensive appeal on the basis that defendants had not filed the $250 bond as of that date.
On July 10, defendants moved for a new trial or a rehearing contending that no stipulations were entered into on June 12, and also contending that plaintiffs had obtained nothing more than a "quit-claim deed" from the Internal Revenue Service.
On July 13, defendants filed a notice of appeal and for writs of certiorari, mandamus, prohibition and for a stay order relative to the rescission of the suspensive appeal filed July 7, 1981. A stay order was granted and writs were taken to the Louisiana Fourth Circuit Court of Appeal which denied the writs, stating the appeal bond was filed untimely. On July 15, the Louisiana Supreme Court also denied the writs.
Thereafter, on July 17, defendants' motion for a new trial, filed on July 10, was denied. On that same date, defendants were granted another suspensive appeal. Subsequently, defendants moved for an extension of time within which to pay appeal costs; and, by order of September 4, 1981, defendants were granted fifteen days to pay the same.
Plaintiffs then sought to dismiss defendants' second suspensive appeal; and, on September 14, the Louisiana Fourth Circuit Court of Appeal rescinded the July 17 order granting the suspensive appeal and granted plaintiffs' motion to dismiss on the basis that no appeal lies from a denial of a motion for a new trial.
Thereafter, on October 5, 1981, defendants filed a petition to annul the original judgment of possession, the merits of which were heard on February 25, 1982. Along with the merits, the court also considered and rejected a motion to re-open the case filed that date by defendant and denied a motion for summary judgment filed by plaintiffs previously. The court then took the case under advisement.
Subsequently, plaintiffs apparently filed a motion for new trial to admit newly discovered evidence and another hearing was set for August 13, 1982. A partial hearing on that date was continued and the case was heard again on September 21 and November 5, 1982.
Following these four hearings, the trial court rendered judgment on December 20, 1982 in favor of plaintiffs, dismissing the petition to annul the judgment of eviction. As a result, defendants perfected this devolutive appeal from that judgment, following which plaintiffs filed an exception of res judicata; and, in oral argument to this court, requested damages for frivolous appeal and attorney's fees.
In brief to this court, appellants assert the trial court erred in failing to find ill practice was committed by appellees under the facts.
The issues as presented by appellants are as follows:
*705 (1) Is it an ill practice by counsel for plaintiffs after receiving numerous pleadings from defendants' counsel to contact the trial judge and the judge's minute clerk and deliberately misrepresent to the judge and minute clerk that defense counsel has abandoned his defense and that defense counsel has no objection to a judgment being given against him?
(2) After receiving a motion for continuance from defense counsel and notice from the court that the previous rule date set for June 5, 1981, has been continued to September 4, 1981, and that defense counsel will be out of the country until after July 11, 1981, is it then an ill practice to contact the trial judge and his minute clerk and another judge in order to reverse still another judge's order through ex parte proceedings without notifying defense counsel or giving defense counsel an opportunity to argue?
(3) Is it an ill practice for plaintiffs' counsel to use a copy of a letter addressed to a third party which simply stated what another lawyer and defense counsel were attempting to achieve in resolving the aforementioned rule for possession to convince the trial judge and his minute clerk that defense counsel had abandoned his defense (house and law office) and especially in advance of a granted motion for a continuance?
(4) Is it an ill practice for defense counsel to commit the foregoing acts when he knew that defense counsel had at least three years to redeem his property but nevertheless get his judgment within six months of filing his petition for possession?
(5) In view of the foregoing acts by defense counsel, has a fraud been perpetrated on at least one court or were said acts innocent misrepresentations by an inexperienced attorney which caused at least the trial judge to commit judicial error when he signed the judgment complained of?
(6) Under Louisiana code authority and Louisiana jurisprudence, if a judgment has been obtained by fraud or innocent misrepresentations, is said judgment entitled to be annulled and/or set aside in the interests of justice and fair play?
In several issues presented by appellants, it is asserted that appellees misrepresented to the trial court, either innocently or fraudulently, that appellants abandoned its defenses to the suit causing the trial judge to erroneously render a decision in advance of the scheduled trial date. Appellants argue those actions of appellees subject the judgment to annulment for fraud or ill practice under LSA-C.C.P. art. 2004.
LSA-C.C.P. art. 2004 provides:
"A final judgment obtained by fraud or ill practices may be annulled.
An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices."
The legal test for determining whether or not a judgment has been obtained by "actionable fraud or ill practices" is whether (1) the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief; and (2) the enforcement of the judgment would have been unconscionable and inequitable. Johnson v. Jones-Journet, 320 So.2d 533 (La.1975), rehearing denied.
In Smith v. Cajun Insulation, Inc., 392 So.2d 398, 401 (La.1980), the Louisiana Supreme Court discussed LSA-C.C.P. art. 2004, stating:
"The action provided by this article is not a substitute for an appeal from a judgment that might be erroneous due to insufficiency of evidence or misinterpretation of substantive law, but, rather, is a separate remedy designed to afford relief against a judgment procured by methods viewed with disdain by the judiciary. Walsh v. Walsh, 215 La. 1099, 42 So.2d 860 (La.1949); Schoen v. Burns, 321 So.2d 908 (La.App. 1st Cir.1975); Alleman v. Guillot, 225 So.2d 607 (La. App. 1st Cir.1969), writ ref. 254 La. 858, 227 So.2d 596. In discussing `ill practices' under the Code of Practice, art. 607, the predecessor of La.C.C.P. art. *706 2004, this Court stated in Alonso v. Bowers, 22 La. 1093, 64 So.2d 443 (La.1953):
`Under the jurisprudence any improper practice or procedure which enables a party to obtain a definitive judgment comes within the meaning of this article. The courts have looked at each case from a purely equitable viewpoint to ascertain whether allowing the judgment to stand would be inequitable or unconscionable in view of the practice or procedure which enabled the party to obtain such judgment.'
This language has been clarified to mean that there need not necessarily be a showing of intentional fraud or wrongdoing for a plaintiff to prevail. Even innocent acts which deprive a party case (sic) in judgment of some legal right can form the basis of this nullity action. Leidig v. Leidig, 187 So.2d 201 (3d Cir.1966); Collins v. Collins, 325 So.2d 773 (La.App. 2d Cir.1976); Tapp v. Guaranty Finance Co., 158 So.2d 228 (La.App. 1st Cir.1963), writ den. [245 La. 641], 160 So.2d 228 (La.1964)." (Emphasis added)
As in any other action, however, the question of whether ill practice occurred is a factual one, and the findings of the trial court in this regard are subject to great weight on appeal. Those findings may not be disturbed in the absence of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973), reh. den.; Collins v. Collins, supra.
The trial court herein found that there were no ill practices, and that plaintiff failed to carry its requisite burden of proof. The trial court also determined that several allegations in the petition for nullity were res judicata as they either related to issues concerning the rescission of appellants' two suspensive appeals or to the merits of the case.
The facts show that the nullity action arose from a confusing series of events which led to a judgment on the record adverse to appellants. Appellants attempted to perfect a suspensive appeal, but the appeal was rescinded by ex parte order of a substitute judge for failure to timely file the required bond. No devolutive appeal was requested. Writs were taken on the issuance of the ex parte rescission on the time required to file bond, which were denied by both the Fourth Circuit Court of Appeal and the Louisiana Supreme Court. Thus, barring a finding of nullity by this court, the judgment complained of is final and definitive. Appellant argues herein that the case was decided based upon written stipulations not actually in the record and upon the appellees' misrepresentation to the trial court through a phone call in which a letter written by appellant Lee was used to convince the judge that defendants had abandoned their case and had no objection to judgment being rendered against them.
The minute entry in the record reflects that apparently the parties agreed on May 15 at a bench conference to submit written stipulations of fact since apparently there were no factual issues in dispute. Also apparently the parties were intending to submit the case on the record containing the written stipulations. The record then reflects that the stipulations were rejected by appellant Robert Lee who, it should be noted, is an attorney at law and represented himself and his wife in these proceedings. The stipulations were rejected because of the use of the word "quit-claim" deed as opposed to "deed." The dispute was not resolved, no written stipulations of fact were ever filed, and appellant continued to file various pleadings into the record, one of which resulted in a continuance of the scheduled hearing to September 4, 1981. However, on June 1, appellees' law firm received a letter from appellant Robert Lee in reference to a proposed status conference on the case in question. In that letter, Mr. Lee unequivocally states that the case was submitted and that no conference was necessary. Confusion as to whether it was the party's intent to submit the case without stipulations or not apparently rises from the minute entry of June 5 and June 12 which states respectively that, "All rules and exceptions submitted by stipulation" and "Submitted on stipulation *707 dictated into record". The dictated stipulation is as follows:
"Allright gentlemen, I understand from our bench conference that you all are going to draw up a written stipulation attached thereto certain documents which you agree to authenticity and submit the matter on that written stipulation and documents in the record in this case. Do you want to submit memos of argument with that?
Mr. Lee: All I need submitted is already in the record, your Honor.
Mr. Allday: I have a memoranda (sic) that I would like to submit.
The court: Allright, if you feel you would like to respond to his memoranda let me know, Mr. Lee, before I decide the case."
Sometime between June 5 and June 12, the court spoke to a member of appellees' firm who informed the judge that he thought the case was submitted by "virtue of a stipulation even though they (appellants) filed some pleadings after that." Apparently the difficulty herein arises from the use of the word "stipulation" in the minutes to refer both to a stipulation that the case was submitted, as well as to the intent of the parties to submit the case upon written stipulation of facts which thereafter failed to materialize in the record.
Nevertheless, the testimony indicates that it is probable that the June 1 letter was a primary indication of appellants' agreement in this regard. Appellant argues, however, that appellees' phone call referred the judge to the letter improperly and was a deliberate effort to secure a judgment in their favor while appellant was supposedly out of town.
In rendering the original judgment of July 6, 1981, the trial judge states, "The court considered the pleadings, the stipulations of counsel and the argument of counsel...." In the nullity hearing, the judge in the original matter was called to testify and stated that he believed the case had been submitted for decision, but could not remember if he based his decision on written stipulations he assumed were in the record but were not in fact. However, he assumed that his actions in proceeding to decide the case would have been influenced by Mr. Lee's letter of June 1, 1981, a copy of which was sent by Mr. Lee to the trial judge and which was made part of the record. Contrary to appellants' argument, there is no evidence the trial judge was either told by appellee or led to believe by any party that appellant had abandoned his defenses. A review of the record and testimony, along with the letter by appellants, indicates that when the judge decided the case July 6, 1981, both he and the appellees were under the impression that the case, with or without written stipulations of fact, had been submitted for decision solely on the documents and pleadings in the record with appellants' knowledge and consent. Thus, at least with respect to these actions complained of, the trial judge cannot be said to have committed manifest error in rejecting appellants' claim of fraud or ill practice.
Appellants' remaining allegations presented to this court attack as ill practice the actions taken by appellee in rescinding the suspensive appeal by ex parte order, as well as the actions of appellee in securing a judgment under an alleged improper proceeding under the law.
In response, appellee filed an exception of res judicata pursuant to LSA-C.C.P. art. 2163.
The record reflects that the trial court found a number of the allegations in the nullity petition res judicata, including the two aforementioned allegations of ill practice presented to this court.
LSA-C.C. art. 3556(31) defines res judicata as follows:
"Thing adjudged.Thing adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal."
*708 Secondly, LSA-C.C. art. 2286 provides that for a judgment to have the authority of the thing adjudged, it must meet the following requirements:
"The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."
Appellant argues that appellees committed ill practice in failing to inform the judge involved in the ex parte motion to rescind appellants' suspensive appeal of the judgment of possession and eviction of two cases which it claimed implicitly overruled the 24-hour bond requirement under LSA-C.C.P. art. 4735. Appellants, however, presented the same argument of the validity of the 24-hour requirement to the Fourth Circuit Court of Appeal and the Louisiana Supreme Court, both of which rejected appellants' argument. Whatever occurred at the trial court level, in this respect, the trial court properly determined the decision rendered the issue of timeliness res judicata. Furthermore, this allegation is irrelevant to the question before this court since the events occurred subsequent to rendition of the judgment of possession. It is that judgment appellants seek to have annulled.
Appellants' remaining allegation asserts that appellees committed ill practice by knowingly pursuing their action through improper articles of eviction. The issue as to whether the code articles used for the eviction procedures were proper under the law was squarely before the trial court by virtue of appellants' exceptions. The trial judge rejected the argument; and, thereafter, appellants' remedy was appeal. Appellant failed to perfect either a suspensive or devolutive appeal; and, thus, the decision attained the status of res judicata. As stated earlier, an action for nullity is not a substitute for the appeal process. Smith v. Cajun Insulation, Inc., supra.
As to the actions of appellees in pursuing their claim in this regard, it is the duty of counsel to zealously pursue all avenues of legal remedies for the client so long as those actions are neither unethical or unconscionable. Contrary to appellants' assertions, the evidence suggests that any legal remedies appellants were deprived of were lost due in great part to appellants' own actions. Thus, again, the court must conclude that the trial judge was not clearly wrong in his findings.
Finally, in oral argument appellees presented a demand for damages and attorney's fees for a frivolous appeal. Damages and attorney's fees for frivolous appeal must be raised either in an independent appeal or in a timely answer to appellants' appeal. LSA-C.C.P. art. 2133; Cheramie v. Vegas, 413 So.2d 1343 (La.App. 1st Cir.1982); Good v. Louisiana Commission on Governmental Ethics, 370 So.2d 123, writ denied 371 So.2d 836 (La. 1st Cir.1979).
Thus this court is precluded from considering the request brought for the first time in oral argument.
In summary, after a review of the law and the evidence, we find that the trial court was not clearly wrong in determining that appellants failed their burden of proof and that no ill practice occurred which would nullify the judgment of possession and eviction. In addition, appellees' demand for damages for frivolous appeal and attorney's fees will not be considered as the demand is not properly before the court.
For the foregoing reasons, therefore, the judgment of the trial court is hereby affirmed. Costs of this appeal are to be paid by appellants.
AFFIRMED.