DUFRESNE, Judge.
This is an appeal by David Millet, Plaintiff-appellant, from a judgment against Joseph Wigginton, defendant-appellee, in a suit on a promissory note and a lease agreement. Because we find that a reasonable attorney fee of 20% of the amount recovered in the judgment should have been awarded as specified in the note, the judgment is amended to include that fee. In all other respects, the judgment is affirmed.
In July, 1984 the parties negotiated a lease concerning gasoline pumps at a convenience store. It appears that prior to these dealings, Wigginton owned four pumps installed at his store location. Immediately prior to signing the lease, he sold the pumps to Millet, a gasoline supplier. Under the terms of the lease, Millet was to pay $1,000 per month rent for the service area and the right to sell gasoline at the store, $350 per month for utilities, and was obliged to maintain the driveway and canopy lights. Wigginton’s obligations were to sell Millet’s gasoline and deposit the proceeds daily in a bank account to be opened by Millet for that purpose. As a commission for this service, Wigginton was paid one cent per gallon of gasoline pumped.
The parties complied with their respective obligations for several months, with one exception. Rather than make daily deposits, Wigginton held these funds and paid them to Millet’s agent whenever gasoline was delivered, and the amounts owed for gas previously sold were determined from the meters on the pumps. However, *208 Millet testified that this method of payment was no problem, and the record does not show that he ever complained of this procedure to Wigginton.
In late November, 1984, Wigginton gave Millet several N.S.F. checks in payment for gas. Wigginton’s explanation of these checks was that one of his employees had embezzeled some $16,000 from the business. On December 6, Millet stopped supplying gasoline to the pumps for sale. On December 27, Wigginton signed a promissory note to Millet for $8,983.08, to cover the N.S.F. checks, and Millet once again supplied gasoline. Millet paid neither rent nor utilities for December. During January, $1,600 was paid on the note.
On February 7, Millet presented an invoice for $1,952.62 for gasoline sold. Wig-ginton contended that he was due an offset against this amount for the December rent and utilities, as well as $337.35 for an earlier overpayment and refused to pay the face amount of the invoice. Millet thereupon stopped gasoline deliveries and locked the pumps. Millet paid no further rent and Wigginton ceased payments on the note.
On March 7, 1985, Millet filed suit on the note and outstanding invoice, alleging breach of the lease by Wigginton. Wiggin-ton answered and reconvened alleging that Millet had left his pumps on the premises, but had failed to pay rent and utilities, and that the rent owed had offset the amount owed on the note.
After trial on the merits, the trial judge found that Wigginton was current in all his obligations under the lease on February 7, and that Millet had breached the lease in locking the pumps. He further ruled that Wigginton was entitled to rent of $300 per month for 17 months from the time of the breach until trial because Millet had allowed the pumps to remain on the premises, thus precluding Wigginton from selling gasoline from another supplier during that period. He therefore reduced the amount owing on the note by this rental amount, as well as the December rent and utilities, one fourth the February rent and utilities and a miscellaneous credit owed Wigginton. The final amount owed on the note after these setoffs was $2,228.35, which he awarded to Millet. Attorney fees were denied.
Millet now appeals alleging that the trial judge erred:
1. In ruling that any breaches of the lease which may have occurred in Wiggin-ton’s tendering N.S.F. checks in November, and failing to make daily deposits, were cured by execution of the promissory note, and Millet’s acquiescing in payments other than by way of daily bank deposits;
2. In not awarding attorney fees as per the note; and
3. In awarding Wigginton $300 per month for the time the pumps remained on the property.
As to the N.S.F. checks, Millet contends that this constituted a breach which terminated the lease agreement as of late November, 1984. In effect, he is urging a retroactive cancellation of the lease. A similar argument was rejected in Houma Oil Co., Inc. v. McKey, 395 So.2d 828 (La.App. 1st Cir.1981). There, the lessee, although alleging that the premises were not fit for their intended purposes when leased, nonetheless continued to occupy the premises for other purposes. The court ruled that in continuing to occupy the premises after grounds for cancellation arose, the lessee was precluded from retroactively dissolving the lease as of the date of the original breach. Here, Millet may have had grounds to rescind the lease when he received the N.S.F. checks, but he took no action to do so. Instead, he accepted a promissory note as payment for the checks, and continued to occupy the premises. Further, payments on the note were current as of February 7. In these circumstances the trial court was correct in concluding that any prior breach was cured by acceptance of the note.
Similarly, it is well established when a party regularly accepts payments due under a lease in a manner not strictly in accordance with the lease agreement, such acceptance precludes dissolution of the lease on grounds of such irregularity. Glover v. Hanks, 396 So.2d 949 (La.App. 1st Cir.1980); Major v. Hall, 251 So.2d 444 *209 (La.App. 1st Cir.1971). Here, not only did Millet accept payments on a non-daily basis, but he testified at trial that the method of payment used by Wigginton was no problem. On these facts, he cannot now assert that this mode of payment constituted grounds to terminate the lease.
In regard to attorney fees, La.Civ. Code art. 2000 provides that attorney fees expressly agreed to in a fixed or determinable amount are recoverable. The note at issue provides for 20% attorney fees, which we find reasonable here, and we therefore award Millet $445.67 for that item.
The final issue is whether the award of $300 per month rent for the time Millet continued to occupy the premises with his pumps was proper. The trial judge found as a matter of fact that Wigginton was current in all of his obligations under the lease when Millet stopped supplying gasoline and locked the pumps. We find nothing manifestly erroneous in this factual determination. Canter v. Koehring, 283 So.2d 716 (La.1973). There was no dispute that at the time of trial Millet’s pumps were still occupying the leased premises. The trial court reasoned that although rent was due for this continued occupancy, because Millet was receiving no benefit from the pumps it would be inequitable to assess a rent of $1,000 per month. He therefore fixed the rent at $300 per month.
Having found that Wigginton did not breach the lease, and it being undisputed that Millet continued to occupy the premises, the trial judge might well have assessed rent at the full amount of the lease. However, we need not reach the question of whether the trial judge properly resorted to equity in assessing a lesser amount, because Wigginton neither appealed or answered this appeal. In this circumstance, we cannot amend the judgment in his favor, and therefore need not decide that issue. Bustamante v. Manale, 397 So.2d 842 (La.App. 4th Cir.1981). Similarly, damages for frivolous appeal must be urged by way of appeal or answer to an appeal. Bush v. Lee, 443 So.2d 702 (La. App. 5th Cir.1983). Neither action was taken here and we therefore do not consider that issue.
For the foregoing reasons, the judgment ¡s amended to award Millet attorney fees in the am0Unt of $445.67. In all other respects, the judgment is affirmed at appellant’s costs.
AMENDED AND AFFIRMED.